## DIXON v. ORR.

ELECTIONS: *Evidence of result.*

> The poll books and tally sheets, made out and properly certified by the election officers, and the ballots themselves, are the primary evidence of the result of an election. If these are lost, destroyed or stolen, resort must be had to secondary evidence ; and in such case spectators, who were present at the official count, heard the result announced, and inspected the papers prepared and signed by the officers recording such result, are competent witnesses to prove the number of votes given to each person who is voted for.

APPEAL from *Miller* Circuit Court.
B. F. ASKEW, Judge.

*Jones & Martin* and *T. E. Webber* for appellant.

The ordinary rules of evidence apply in election contests. *McCrary on Elec., sec. 306.*

The depositions of the witnesses, Boykin and Lewis, were incompetent. They testify to contents of returns, when there were none. *35 Ark., 450; 32 id., 553.*

Their testimony is secondary evidence. *27 N. Y., 45.* The ballots are the best evidence. *28 Cal., 123.* See, also, *McCrary on Elec., sec. 391; 19 Ohio St., 306, 319.*

*Scott & Jones* for appellee.

The poll books and tally sheets are competent evidence in a contested election to show the vote. They are good ·until

impeached, and afford *prima facie* evidence of the number of votes cast. *McCrary on Elec.*, secs. 290, 292; *16 Ohio St., 184.* The election returns show *prima facie* the state of the vote cast. *Cooley Const. Lim., sec. 625; McCrary on Elec., sec. 302.*

The poll books and tally sheets being lost, it was competent to prove by secondary evidence the result as indicated by them.

SMITH, J.   At the general election which took place in September, 1886, Dixon and Orr were opposing candidates for the office of Sheriff of Miller county.   Accrding to the returns certified to the County Clerk, Dixon received 1015 votes and Orr 987 votes.   No return was, however, made from Red River township, the voting precinct of which was at Garland City. Dixon received the commission, and Orr instituted his contest for the office.   The sole ground relied upon in his notice of contest was the suppression of the vote of Red River township. The judgment, both of the County Court and of the Circuit Court, was favorable to Orr.

From the testimony of the three judges of election and the two clerks, all of whom were supporters of Dixon, it appeared that an election was regularly held at Garland City on the 6th day of September, 1886, that after the close of the polls at sunset the ballots were duly counted; that the number of votes received by each candidate was certified under the hand of the judges, and attested by the clerks; and that the ballots, together with one of the poll books, were sealed up, directed to the County Clerk and delivered to one of the judges, by whom they were to be taken to the County Clerk.   This judge deposed that he deposited the election papers in his trunk at his room, and that next morning he discovered they had been abstracted.

The election officers displayed a remarkable deficiency of memory as to the state of the vote.   None of them seemed to

retain the least recollection of the result. One judge could not even remember whether so many as five votes had been polled at that precinct. But the others stated that the total vote was about 100, or perhaps a little more.

The only direct testimony as to the number of votes cast for Sheriff was delivered by two colored men, who were candidates, respectively, for the offices of justice of the peace and constable of that township. They testified that they were present during the entire count, seated not more than eight feet from the judges; that John Crocker, one of the judges. took the ballots out of the ballot-box, one at a time, and called out, in a distinct tone of voice, the names inscribed on each ballot; that they, being interested for themselves as well as for the ticket upon which they were running, kept an account; that their manner of keeping the tally was as follows: Whenever a ballot was read they scored one for the entire Democratic or Republican State ticket, accordingly as the first name on it was Simon P. Hughes or Lafayette Gregg, these two being the rival candidates for Governor; and in like manner scored one for the Democratic or Republican county ticket, according to the fact whether the ballot that was in the act of being called was headed by the Democratic or Republican candidate for the General Assembly; and if there were any scratches or deviations from the straight party ticket, the names of the candidates so scratched were noted on the paper, and an account kept of the number of scratches and to whom the scratched votes were given; that the tallies so kept corresponded with the number of votes received by each candidate as announced by the officers of the election at the close of the canvass; that 114 votes were polled at this precinct, of which Dixon received 27 and Orr 87.

One of these witnesses further swore that, after the count had been finished, he stood behind the chair of one of the clerks of election who was transferring the sum total of the

votes cast for each candidate from the tally sheets to the poll books, and then and there inspected the clerk's figures and compared them with his own, and that these sums total were carried to the poll books and afterwards certified by the judges; and that these documents showed the result of the Sheriff's election to be as above stated.

The evidence of these two witnesses was strenuously objected to; and its competency is indeed the only point worthy of consideration in the case.

Dixon's counsel contend that, as the witnesses do not pretend themselves to have read the ballots, nor to state how each voter voted, but only to show the result by the announcements made in their hearing and by the footings made by the clerks, their testimony is mere hearsay, or at the utmost, an attempt to establish by secondary evidence the contents of returns, which never had any legal existence, not having been actually transmitted to the County Clerk; and that the best evidence of the state of the vote was the testimony of the voters themselves.

The real inquiry is, who received a majority of the legal votes cast in Miller county for the office of Sheriff? Upon a contest all such votes must be counted, whether they were returned or not. *Constitution of 1874, art. 3, sec. 11; Govan v. Jackson, 32 Ark., 553.* Where an election has been legally held and fairly conducted, nothing will justify the exclusion of the vote of an entire precinct except the impossibility of ascertaining for whom the majority of votes were given.

Now, the poll books and tally sheets made out and properly certified by the election officers, and the ballots themselves, are the primary evidence of the result of an election. But if these are lost, destroyed or stolen, this does not destroy the validity of the count, but resort must be had to secondary evidence.

ELECTIONS: Evidence of result.

The testimony of voters who participated in the election upon the point for whom their ballots were cast is admissible. But the secrecy of the ballot is established by law and a qualified elector cannot be compelled to disclose for whom he voted. It is only when he chooses to waive his privilege that his evidence can be had. *Cooley Const. Lim., 762; McCreary on Elections, secs. 195-6, 301,* and cases cited.

The judges and clerks who assist in the canvass of the votes may certainly testify, in the absence of election returns and papers, to the number of votes given to each person who is voted for. We are also of opinion that spectators who were present at the count, heard the result announced and inspected the papers prepared and signed by the officers, recording such result, are competent witnesses. Elections are matters of general interest, and section 2688 of Mansfield's Digest directs that the result of the canvass be publicly proclaimed to the people present.

Affirmed.