Wilson *v.* Ellis.

5-1873                            324 S. W. 2d 513

Opinion delivered June 1, 1959.

*Sam Anderson* and *Holt, Park & Holt,* for appellant.

*Walter J. Hebert, Lloyd E. Darnell, C. A. Stanfield, Q. Byrum Hurst, N. L. Schoenfeld,* for appellee.

PAUL WARD, Associate Justice. This election contest grows out of the first democratic primary on July 29, 1958, to select the nominee for sheriff of Garland County. The tabulation of the returns by the election officials showed 6,143 votes for Leonard Ellis, appellee; 5,942 votes for Clyde Wilson, appellant, and; 175 votes for Doyle Rowell, there being only three candidates for the office of sheriff. On July 30, appellant demanded a recount before the Garland County Democratic Central Committee, the result of which showed 6,172 votes for appellee, 5,933 votes for appellant, and 182 votes for Rowell, and on August 1st, appellee was declared the nominee and certified as such.

On August 18, 1958, appellant filed a complaint in the Circuit Court pursuant to, and within the time provided by Ark. Stats. Sec. 3-245, contesting the certification of appellee. Three days later (the last day for filing under the above statute) he filed an Amendment to the Complaint, and some two and one-half months later (on November 3, 1958) he filed another Amendment. Appellee filed a demurrer to the complaint and the first Amendment, and also filed a Motion to Strike the second Amendment. After taking testimony on the Motion to Strike the trial court sustained appellees' demurrer, struck portions of the second Amendment, and dismissed the complaint from which action of the trial court appellant prosecutes this appeal.

We deem it unnecessary to consider the action of the trial court on the Motion to Strike, because we have concluded that the complaint and the first Amendment fail to state a cause of action and that they cannot be corrected to do so by the second Amendment since it was not filed within 20 days after certification as provided by the above cited statute.

This brings us to an examination of the allegations contained in the complaint and the first Amendment. Since the Complaint and the Amendment contain a very large number of paragraphs, with each paragraph purporting to state a separate allegation or ground for relief, and since many of the allegations or grounds  are

similar, we will consider them in groups rather than separately. It would, we believe, also unduly extend this opinion and add nothing to its value as a precedent to copy the pleadings in full.

(a) One allegation reads as follows: "Many persons voted absentee in said primary who were not qualified electors." It will be noted that the above contains no allegation as to how many voters were allegedly disqualified nor does it say for whom the votes were cast. There were seven other paragraphs in which the allegations were of the same nature.

(b) Another paragraph of the complaint reads: "Many persons voted absentee ballots who claimed to be voting for the first time and who voted for the defendants, Ellis and Rowell, and no written affidavits of such right to vote were taken and attached to their ballots as required by law." It will be noted that while it is stated for whom the votes were cast, the number of votes is not given. Again, there were seven other allegations of exactly the same nature.

(c) Another paragraph reads:

"In Ward 2, Box A, this Plaintiff, according to the election returns, received 182 votes; the Defendant, Leonard Ellis, received 329 votes and the Defendant, Doyle Rowell, received 4 votes. This Plaintiff alleges the truth to be that he received more than 182 votes in Box A, Ward 2 of the City of Hot Springs, and the Defendant Ellis received less than 329 votes in Box A, and the Defendant Rowell received less than 4 votes in Box A, and that a proper count of the ballots cast in Box A, Ward 2 of the City of Hot Springs, Arkansas, will establish the truth of this allegation."

While the above paragraph gives the number of votes and for whom cast, there is no allegation as to what extent the result would be changed if a proper count were made. The complaint contains four or five other paragraphs of this same nature.

(d) One of the paragraphs reads as follows:

"One Glen Buchanan, a duly appointed guard of Ward 2, of the City of Hot Springs, Arkansas, and an employee of the Southern Club in said City, was over-zealous in his efforts to secure votes for the Defendant Ellis and openly solicited votes for said Defendant Ellis inside the polling place."

The above, of course, does not allege that any illegal votes were cast for Ellis, and certainly no specific number. If the allegation was meant at the time to be the basis of fraud, it has not been so urged on appeal. Moreover, it is well established by our decision that many election regulations such as this one, which are mandatory and may be enforced before the election are not mandatory after the election, and that the courts do not favor disfranchising a legal voter because of the misconduct of another person. See: *Ellis* v. *Hall, Secretary of State,* 219 Ark. 869, 245 S. W. 2d 223, and *Orr* v. *Carpenter,* 222 Ark. 716, 262 S. W. 2d 280. There were 8 other paragraphs in the complaint of the same nature.

(e)   In another paragraph appellant alleged:

"Eighty-one illegal ballots were cast for the defendants, Leonard Ellis and Doyle Rowell, in one lot in the absentee box by employees of Olsen's Carnival, Inc., all in the same handwriting and all of said absentee ballots were mailed to the County Clerk in one envelope and all of said eighty-one illegal votes were cast and counted for the Defendants Ellis and Rowell."

The above allegation comes closer to stating a cause of action than any of the others, in our opinion, but we think it also fails to make out a *prima facie* case. First, it will be noted there is no allegation that all, or how many, votes were cast for Ellis. Therefore, according to the allegation, 3 of the 81 votes could have been cast for Ellis and 78 for Rowell, which would leave Ellis with 100 votes more than the required majority, and still the nominee. In the case of *McClendon* v. *McKeown,* 230 Ark. 521, 323 S. W. 2d 542, we said in commenting on McClendon's complaint: "He has never stated as a fact that he received a majority of all legal votes cast in the election, he has merely stated that if the ballot boxes

were opened and the alleged illegal ballots cancelled and a retabulation made, he . . . verily *believes* he will have received more votes than L. O. McKeown.'' (Emphasis supplied). There, we held the above allegation insufficient. Here, appellant does not even express a belief that he would have a majority.

Nor does a general allegation at the end of appellant's complaint to the effect that he would have a majority of all the votes if all illegal votes were cast out. The simple reason is that a large number of indefinite allegations cannot add up to a definite allegation.

When all the above is considered in the light of our former decisions and the pertinent statutes, we are forced to conclude that the Complaint and the Amendment do not state a cause of action.

This case is controlled to a large degree by our recent opinion in *McClendon* v. *McKeown, supra.* There we affirmed the Circuit Court which sustained a demurrer to a complaint because it failed to state ''how many legal votes he (appellant) claimed that each candidate received.'' There is no such allegation in this case. In that case we also said: ''but McClendon has never given the name of any person alleged to have cast an illegal ballot.'' That statement is true in the case under consideration. The only way in which the cited case differs from this case is that McClendon refused to give names, while here it appears that appellant merely failed to do so. We believe that difference is not controlling here for the reason that appellant made two attempts and failed to give names, and also because he was present when the ballot boxes were opened by the Central Committee and he had every opportunity to secure names if he desired to do so. In the *McClendon* case we also said: ''It was not the duty of the Circuit Court on its own initiative to ask McClendon to name the persons alleged to have cast illegal ballots; it was McClendon's responsibility to allege a cause of action.'' We know of no reason why the same rule should not be applicable in the case under consideration. Not only does the statute (Ark. Stats. Sec. 3-246) require the contestant

to make out a *prima facie* case, but the same requirement was made in *Robinson* v. *Knowlton*, 183 Ark. 1127, 40 S. W. 2d 450; in the *McClendon* case, and: in *Hailey* v. *Barker*, 193 Ark. 101, 97 S. W. 2d 923. In *Hill* v. *Williams*, 165 Ark. 421, 264 S. W. 2d 964, we said it was necessary to allege facts and not conclusions. In *Moore* v. *Childers*, 186 Ark. 563, 54 S. W. 2d 409, it was held that a complaint could not be based on mere conclusions.

We have carefully examined each one of the numerous allegations in appellant's pleadings and find a total failure to set out the names of the persons alleged to have cast illegal votes, and that the allegations are indefinite or based on conclusions or on irregularities that are not mandatory at this stage of the proceedings. This being the case, we think appellant had no right to file his amendment after the statutory time of 20 days had elapsed.

In summation of the entire matter we adopt as pertinent here the following statement which was approved in closing the *McClendon* opinion, *supra*:

"Neither the allegations nor the prayer of the Petition set out a *prima facie* case under the procedure and allegations essential to state a cause of action for such an election contest. The Petition and prayer for relief suggest a discovery proceedings or 'fishing expedition' wherein the Court is asked to supplant or substitute the Court for the County Central Committee . . . It is not the duty, or within the power, of the Court within the scope of the allegations and prayer of the Petition herein, to impound and open the ballot box or boxes, and, in effect canvas the votes cast for Mayor (Sheriff) in order to declare the nominee . . ."

Affirmed.