WOOD *v.* BROWN.

5-2634                                                361 S. W. 2d 67

Supplemental opinion on rehearing delivered October 8, 1962.

(Original opinion delivered June 4, 1962, p. 258.)

*Marcus Fietz, Penix & Penix, Rhine & Rhine,* and *Marshall N. Carlisle,* for appellant.

*Cecil Grooms,* for appellee.

GEORGE ROSE SMITH, J., on rehearing. This election contest involves the Democratic nomination for the office of mayor of Paragould. According to the original returns the appellee Brown was the winner by a vote of 1087 to 1077. The circuit court, after rejecting a number of votes that were found to have been illegally cast, determined that Brown was the winner by a vote of 1078 to 1060. In seeking a reversal the appellant questions a number of the trial court's rulings.

I. In his complaint Wood specifically asked for a recount of the ballots in Box 2 of Ward 2, asserting misconduct on the part of an election judge. On this issue the trial court, at the close of the plaintiff's proof, sustained the defendant's demurrer to the evidence.

In a case tried without a jury, as this one was, the defendant's demurrer to the evidence is really a motion for judgment and is the equivalent of a motion for a directed verdict in a jury trial. In passing upon such a demurrer the trial judge must give the evidence its strongest probative force in favor of the plaintiff. *Werbe* v. *Holt,* 217 Ark. 198, 229 S. W. 2d 225. (That was a chancery case, but we pointed out that the same rule governs cases at law tried without a jury.)

Wood's proof, viewed in its most favorable light, shows that Jones Horne, one of the election judges at Box 2 in Ward 2 had bet $200 that Brown would win the nomination for mayor. There is also testimony that after the election Horne, a one-armed man, said that he could steal more votes with one arm than the other boys could with two and that the election officials at the box in question "didn't count the votes, they just estimated them."

In determining whether this testimony was sufficient to make a *prima facie* case we have no controlling precedent in this state. The decisions elsewhere range from one extreme to the other. Some jurisdictions hold that a recount should be granted almost as a matter of course, others that one should be granted if the applicant shows a reasonable basis for doubting the accuracy of the original returns, and still others that no recount is to be allowed unless the losing candidate proves that the result of the election will be changed in his favor.

The third view seems to us to be logically untenable, for the apparent loser does not need a recount if he has already shown himself to have really been the winner. It may be observed in passing that some courts, in putting obstacles in the way of a recount, stress the importance of preserving the secrecy of the ballot. *Free* v. *Wood,* 137 Kan. 939, 22 P. 2d 978; *Markowsky* v. *Newman,* (Tex. Civ. App.) 138 S. W. 2d 896. This consideration is entitled to little weight in Arkansas, for our system of having separate ballot-stubs allows the original ballots to be re-examined without a disclosure of how each person voted. See Ark. Stats. 1947, Title 3, Ch. 8.

It seems evident that not all applications for a recount stand upon the same footing. Whatever may be the rule in some situations, we are of the opinion that an exceptionally strong case is made when the losing candidate proves that an election judge bet on the outcome, in violation of Ark. Stats., §§ 3-704 and 3-1516. That a judge should have a financial interest in the matter to be determined is contrary to the simplest conception of justice. It is no answer to say that there were other election officers at the polling place, who are not shown to

have violated the law. By analogy, nine jurors may return a verdict in a civil case, but we would not for that reason uphold even a unanimous verdict if it were shown that one juror had a pecuniary interest in the outcome of the case.

The point is this: If a partisan election official has in fact succeeded in miscounting the votes to the advantage of his favorite, the other candidate is ordinarily helpless to expose the wrong except by means of a recount. A case in point is *Meriwether* v. *Stanfield*, (Tex. Civ. App.) 196 S. W. 2d 704, where an election judge had bet on the winning candidate. In answering the argument that the contestant should have been required to show what specific ballots had been falsely tabulated the court reasoned: "[W]e hold that it was impossible for the contestant to allege what individual voters' ballots had been miscalled in time to have made a definite pleading thereof in his petition. Such matters are obviously beyond the knowledge of anyone except the election judge himself. We believe that for the courts to require the contestant in an election contest, before being heard on his petition, to allege specifically the ballots which had been miscalled to his disadvantage would amount to denying to a contestant and to the voters themselves protection from dishonest election judges."

There is no merit in the suggestion that the granting of a recount would violate the rule that the voters are not to be disfranchised by the misconduct of an election official. *Henderson* v. *Gladish,* 198 Ark. 217, 128 S. W. 2d 257. To the contrary, if errors are disclosed by the recount it actually gives effect to the will of the electorate by correcting the returns to speak the truth.

II. The complaint alleged that R. L. Wrape, Sr., had voted twice, for Brown, and that both his votes should be cast out. No proof upon this issue was offered by either side until the plaintiff's rebuttal, when he seems to have attempted to change his position and prove that there were two R. L. Wrapes and that both votes were valid. The court rejected this offer of proof, as not being proper rebuttal. Both the votes were cast out, which was the

relief that the complaint had sought. We do not find in the appellant's abstract any statement that the Wrape votes were actually cast for Wood, nor any indication that this information is to be found in the record. We are thus not in a position to say that the appellant was adversely affected by the trial court's ruling.

III. By cross-complaint Brown challenged the vote of L. J. Dowdy, who had voted in the wrong precinct. At the trial it was impossible to identify Dowdy's ballot, as his ballot-stub could not be found. In the circumstances the court properly permitted Dowdy to waive the secrecy of his ballot and state which candidate he voted for (it was the appellant). When the ballots are not available the electors may be called to testify for whom they voted. *Dixon* v. *Orr,* 49 Ark. 238, 4 S. W. 774, 4 A. S. R. 42.

IV. The complaint attacked the vote of Jerry Jones on the ground that he had not paid his poll tax. This objection was met by proof that Jones was a maiden voter, entitled to vote without a poll tax receipt. It is now argued that Jones improperly cast an absentee ballot, as it turned out that he was not unavoidably absent from his precinct on election day. This issue is presented too late, being raised for the first time on appeal and long after the time for filing a complaint in an election contest. *Angelletti* v. *Angelletti,* 209 Ark. 991, 193 S. W. 2d 330; *Wilson* v. *Ellis,* 230 Ark. 775, 324 S. W. 2d 513. The same reasoning applies to the appellant's belated challenge to W. R. Sanders' vote.

V. The trial court erred in counting, for Brown, the maiden vote of Eugene Penney, since his affidavit of age, required by statute, could not be found. Ark. Stats., § 3-227; *Logan* v. *Moody,* 219 Ark. 697, 244 S. W. 2d 499.

VI. The appellee questioned the votes of Dwight Pranger and his wife and at the trial proved that the couple had been living in St. Louis, Missouri, for nine years before the election. The appellant now complains of the court's refusal to allow him to show that Pranger had a subjective intent to maintain his residence in Greene county, Arkansas. For the reasons stated in Part IV of the

opinion in *Harris* v. *Textor,* also decided today, the proffered proof would not have established the Prangers' right to vote in Greene county.

(This opinion, on rehearing, supersedes the original opinion delivered on June 4, 1962, 235 Ark. 258.)

Reversed and remanded for further proceedings with respect to Box 2 in Ward 2.

McFaddin, J., dissents.

Ed. F. McFaddin, Associate Justice, (Dissenting). On June 4, 1962, this Court, by a four to three vote, affirmed the judgment of the Trial Court in this case. The Majority and Dissenting Opinions of June 4, 1962 may be found in 235 Ark. 258, *et seq.;* and the basis of such Majority Opinion was that the proof offered by the contestant as to Box 2 of Ward 2 was not sufficient to support the allegations contained in the contestant's complaint, or to obtain a recount of the votes in said box.

A petition for rehearing was duly filed, but this Court was in summer vacation from June 4th to September 3rd. Now, the petition for rehearing has been heard and granted; the Majority Opinion of June 4th has been overruled; the Circuit Court judgment has been reversed; and a new trial has been ordered in regard to Box 2 of Ward 2. In short, three of the Justices who voted for the Opinion of June 4th have changed their minds, as they have a perfect right to do. But before I prepared what was the Majority Opinion of June 4th, I read every word of the transcript and studied all of the applicable law. I still maintain that what was the Majority Opinion of June 4th was and is the correct rule of law on the facts.

So I dissent from the present Majority Opinion, which allows a recount of the votes in Box 2 of Ward 2; and I point to my then Majority Opinion of June 4th as containing all the reasons which support my present dissent.