LEON B. CATLETT ET AL  *v.*  THE REPUBLICAN PARTY OF
ARKANSAS ET AL

5-4137                                            413 S. W. 2d 651

Opinion delivered April 3, 1967

[Rehearing denied May 8, 1967.]

*Bruce Bennett,* Attorney General, *H. Clay Robinson,*
Asst. Atty. Gen., for appellant.

*Wright, Lindsey & Jennings,* for appellee.

GEORGE ROSE SMITH, Justice. This is a class suit
brought by representatives of the Republican Party of
Arkansas against representatives of the Democratic
Party of Arkansas, in which the plaintiffs seek (*a*) a
declaratory judgment with respect to the constitutionali-
ty of two statutes pertaining to elections, (*b*), an in-
junction to restrain members of the State and Pulaski
County Boards of Election Commissioners (who are also

parties to the suit) from complying with those statutes, and (*c*) a declaratory judgment construing a third provision of the. election laws. The chancellor granted the relief sought, holding that the first two acts are unconstitutional and that the third act applies only to primary elections.

For an understanding of the issues we need summarize the three statutes only in broad outline. Act 477 of 1963 (Ark. Stat. Ann. § 3-608 [Supp. 1965]), prohibits the minority party member of the County Board of Election Commissioners from naming, at least in certain instances, members of the majority party as election judges and clerks. The chancellor found this act to be unconstitutionally vague and discriminatory.

Secondly, Section 3 of Act 56 of the First Extraordinary Session of 1965 (Ark. Stat. Ann. § 3-273 [Supp. 1965]) prohibits a person who has voted in a particular party primary from being designated by the opposite party to serve as an official at the next general election. The chancellor held that this statute was an attempt to amend an initiated act, Ark. Stat. Ann. § 3-609 (Repl. 1956), and failed to receive the two-thirds vote in the legislature that is required for such an amendment.

Thirdly, Section 1 of Act 57 of the same extra session (§ 3-275) makes it a felony for any person to cast a ballot in more than one party primary election held on the same day. The chancellor declared that this act has no application to persons voting in a general election.

It will be seen that all three of the statutes in issue pertain merely to the procedure to be followed in the conduct of political elections. In view of this fact we cannot reach the merits of the case, for it is too well settled even for argument that a court of equity has no jurisdiction of such questions, even by consent of the litigants. We mention only a few of the many cases so holding.

The landmark decision is *Walls* v. *Brundidge,* 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980 (1913), where we held that a chancery court could not review the action of the State Democratic Central Committee in certifying a nominee for the office of governor. This language from that opinion is directly in point here:

"Wherever the established distinction between equitable and common law jurisdiction is observed, as it is in this State, courts of equity have no authority or jurisdiction to interpose for the protection of rights which are merely political, and where no civil or property right is involved. In all such cases, the remedy, if there is one, must be sought in a court of law. The extraordinary jurisdiction of courts of chancery can not, therefore, be invoked to protect the right of a citizen to vote or to be voted for at an election, or his right to be a candidate for or to be elected to any office. Nor can it be invoked for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election shall be held. These matters involve in themselves no property right but pertain solely to the political administration of government."

In *Miller* v. *Tatum,* 170 Ark. 152, 279 S. W. 1002 (1926), we held that in an earlier proceeding the chancery court had no jurisdiction to enjoin city commissioners from calling an election. From the opinion: "It was merely a political matter not involving any property rights or any matters of public taxation, and the chancery court had no power to interfere either by injunctive process or otherwise. *Hester* v. *Bourland,* 80 Ark. 145 [95 S. W. 992 (1906)]."

It is immaterial that the parties have not raised the issue of jurisdiction, for, as we held in *Sheffield* v. *Heslep,* 206 Ark. 605, 177 S. W. 2d 412 (1944): "Even

though both sides in the present litigation have asked this court to pass on the eligibility of Heslep, nevertheless we cannot do so in this equitable action, because there is no foundation for equitable jurisdiction.'' Nor was the situation changed by the passage of our declaratory judgment statute, because that act empowers a court of equity to render a declaratory judgment only when the subject matter is within the jurisdiction of chancery. *Jackson* v. *Smith*, 236 Ark. 419, 366 S. W. 2d 278 (1963).

We conclude that equity is without jurisdiction. This case, like *Rich* v. *Walker*, 237 Ark. 586, 374 S. W. 2d 476 (1964), hardly calls for a remand with directions that the matter be transferred to law. These appellees filed their suit as representatives of the minority political party and asked that the statute be construed in anticipation of the 1966 general election. No justiciable controversy remains, not only because the general election in question has already been held but also because the Republican Party emerged from that election as the majority party, under the statutory definition. Ark. Stat. Ann. § 3-606 (Repl. 1956). It is not the practice of our courts to decide merely academic questions. *Hogan* v. *Bright*, 214 Ark. 691, 218 S. W. 2d 80 (1949).

Reversed and dismissed.