WILLIAM H. JONES, ET AL v. JACK ETHERIDGE, ET AL

5-4284                                          416 S. W. 2d 306

Opinion delivered June 5, 1967
[Rehearing denied July 26, 1967.]

*Arnold, Hamilton & Streetman,* for appellants.

*W. C. Medley* and *Brown, Compton & Prewett,* for appellees.

CONLEY BYRD, Justice. This is a wet and dry local option election contest between appellants, William H. Jones et al, the contestants, and appellees, Jack Etheridge et al, the contestees. The legal issues involved are:

(1) Can a local option liquor election be held within three years of a prior such election;

(2) The sufficiency of a petition for contest which does not charge any specified vote was illegally cast but contains only generalities or conclusions to the effect that illegal votes were cast; and

(3) Can a petition for the contest of an election be amended, after the expiration of the time limitation set forth in Ark. Stat. Ann. § 48-820 (Repl. 1964) for contesting an election, so as to set forth the names of the voters alleged to have voted illegally and to state that if the named votes were purged the election would be 1,008 for and 1,185 against the sale of alcoholic beverages.

The original petition alleged (1) that the election on November 8, 1966, was not valid, being barred by the

three-year limitation period contained in Ark. Stat. Ann. § 48-818 (Repl. 1964), because a prior local option election was held in 1964; (2) that numerous election irregularities occurred which allowed individuals to vote who were not qualified, not properly registered, under a disability of incompetency, not registered in the voting precinct in which they voted, and residing outside the county, or were incompetents; (3) that a number of votes were not counted; and (4) that if the alleged illegal votes were not included, the majority of the votes cast would be against the manufacture and sale of intoxicating liquors.

The county court overruled the contestees' demurrer and an appeal was taken to the circuit court. There the contestants filed a motion for summary judgment under § 48-818, *supra,* and more than ten days after the vote certification filed their first and second amendments to their petition, wherein they listed for the first time the names of the persons alleged to have voted ''wet'' who were not bona fide residents of the county; who voted outside of their legal voting precincts; who were not registered as required by law at time of voting; who were permitted to vote by marking ''X'' for their signatures although not qualified voters; who voted ''wet'' by absentee but were not actually absent from their precincts on the date of election; and alleged that 1,199 votes were cast and certified for legal sale and 1,185 were cast and certified against legal sale of alcoholic beverages at the election, and that if the 191 alleged illegal votes were purged, the results would be 1,008 votes for and 1,185 against legal sale of alcoholic beverages.

From orders of the circuit court overruling contestants' motion for summary judgment, sustaining a demurrer to the original petition, and striking contestants' first and second amendments to the petition, contestants appeal, relying upon the points above stated.

## POINT I

For their contention that a local option election cannot be held within three years of a prior election, contestants point out that a local option election was held in November, 1964, where the election was in favor of the "drys" [see *Titsworth* v. *Mayfield*, 241 Ark. 641 409 S. W. 2d 500 (1966)]; and rely upon § 48-818, *supra*, which states: "The election or elections herein provided for shall not be held for any county, city, town, district or precinct oftener than once in every three years."

We hold contestants' position to be without merit. *Grubbs* v. *Rowland*, 226 Ark. 874, 296 S.W. 2d 201 (1956). Ark. Stat. Ann. § 48-802 (Repl. 1964), being Initiated Measure 1942, No. 1 § 2 Acts 1943, p. 998, and enacted subsequent to § 48-818, *supra*, specifically provides that only two years must elapse between such elections. Contestants argue that § 48-802 is only cumulative to § 48-818, but in view of the unavoidable conflict between the two statutes the argument is untenable.

## POINT II

We have repeatedly held that a petition for contest of an election does not state a cause of action where it does not charge that any specified vote was illegally cast, or does not contain sufficient information which would identify any such illegal voter, and contains only generalities or conclusions of law to the effect that illegal votes were cast. See Ark. Stat. Ann. § 48-820(2) (Repl. 1964); *Craig* v. *Barron*, 225 Ark. 433, 283 S. W. 2d 127 (1955); and *Countz* v. *Roe*, 231 Ark. 108, 328 S.W. 2d 353 (1959). Therefore we hold that the original petition, above set out, did not state a cause of action and was subject to demurrer.

## POINT III

We agree with the trial court that the amendments to the petition, which were filed after the ten-day period set forth in § 48-820, *supra*, were properly struck from

the record. As has been pointed out in Point II above, the petition failed to state a cause of action, and to permit amendments setting forth names of the alleged illegal voters who voted "wet" so as to state a cause of action would, in effect, permit contestants to assert for the first time their cause of action after expiration of a ten-day period. *Wheeler* v. *Jones,* 239 Ark. 455, 390 S. W. 2d 129 (1965). It should be noted that the ten-day period is not from the date of the election but is from the date the votes are certified by the county board.

It places no burden on contestants to require them to state the names of the voters who allegedly voted "wet" and illegally and to show that if alleged illegal votes were purged it would change the election results. Before one can in good faith contest an election, he must have knowledge of the persons who voted illegally, some knowledge of how the persons allegedly voted, and he must be able to show that if the votes were purged it would make a difference in the outcome of the election. Otherwise, an election contest would become a fishing expedition. An election by the people should not be so lightly impugned by those who only hope to find enough information to change the result of an election.

Contestants rely on *Wassell* v. *Sprick,* 208 Ark. 243, 185 S.W. 2d 939 (1949); to substantiate their contention that the supplying of the names amounted to nothing more than a permissible amendment to the petition. A close reading of *Wassell* v. *Sprick* shows that no objection was there made to the amendments and that they were not an issue before this court. We know of no reason why the matter of amendments after the time could not be waived, and it is altogether possible that the contestee, Sprick, in that case preferred that the matter be tried on its merits rather than to stand on the technicalities of the period of limitations for filing a petition.

Finally, appellants in their reply brief argue that Ark. Stat. Ann. § 27-1117 (Repl. 1962) provides that a

party may amend his pleadings before trial where a demurrer thereto has been sustained; and that if we fail to permit such amendment in this case it will deny to contestants the equal protection guaranteed to them under the 14th Amendment to the U.S. Constitution. We disagree with contestants' position, for the statute applies alike to all petitioners contesting local·option elections. *Moore* v. *Childers,* 186 Ark. 563, 54 S.W. 2d 409 (1932).

Affirmed.