Jack FILES *v.* Woodrow HILL et al

T. K. ARNOLD, III, As An Individual
and As A Class Representative *v.* STATE BOARD
OF ELECTION COMMISSIONERS et al

79-254                               594 S.W. 2d 836
Supreme Court of Arkansas
Opinion delivered February 25, 1980
Rehearing denied March 31, 1980

*Wright, Lindsey & Jennings,* for appellant.

*Philip K. Lyon* and *Donald H. Henry,* for appellee, Lee Munson.

*Steve Clark,* Atty. Gen., by: *David L. Williams,* Asst. Atty. Gen., for appellee Pulaski County Board of Election Commissioners.

JOHN A. FOGLEMAN, Chief Justice. This case involves appeals in two cases which were consolidated for trial because both involve issues arising from the election of a chancellor for Position 1 in Judicial District 6 at the general election held on November 7, 1978. Jack Files filed the first one against Lee Munson, who was certified as the successful candidate, and the Perry County and Pulaski County Boards of Election Commissioners. Files asked that the votes in the election be recounted and that he be declared the winner of the election or that the election be set aside. The second was a suit brought by T. K. Arnold, III, a voter in the general election, as a class action for a declaratory judgment that the certification of the results of the election were null and void and for writs of mandamus to restrain the Secretary of State from canvassing the election returns and the Governor from issuing a commission to Munson, and to require the Pulaski County Board of Election Commissioners to conduct a new election for the office. In the alternative, Arnold asked that the office be declared vacant and filled under Amendment 29, § 1 of the Constitution of Arkansas.

The trial court sustained general demurrers in both cases and dismissed the complaints. We agree that neither complaint stated a cause of action and affirm.

Files made the following allegations in his amended and substituted complaint:

> Munson was the Democratic candidate and Files a duly qualified write-in candidate for Chancellor of District 6, Position 1. The Perry County Board of Election Commissioners certified the results showing that Munson received 1,246 votes and Files, 331 votes on the

day after the election and Files did not have an opportunity to demand a recount prior to the certification. Files alleged that ballots properly cast for him in Perry County were not counted and that the action of the board and the election officials constituted fraud. The Pulaski County Board of Election Commissioners recounted the votes in Pulaski County at Files' request, and certified that Munson had received 23,320 votes and Files 22,504 votes. Files actually received 609 votes that the Pulaski County Board refused to count so that the total vote actually cast for Files was 23,113. Files had received reports from hundreds of voters complaining about the manner in which the election was conducted in Pulaski County. The following is a list of some of the problems that prevented electors from casting their ballots in favor of Files:

A. Instructions concerning write-in votes were not sufficiently clear.

B. Pencils were not furnished for the convenience of voters.

C. Voting machines did not function properly and it was impossible for many voters to cast a write-in vote for plaintiff Files.

D. Voters were instructed that long lines waiting at the polls were caused by write-in voters and that electors could vote more quickly by using machines that were not functioning to accept write-in votes.

E. Instructions for voting for write-in candidate Files were given by election officials, resulting in ballots not being counted although the instructions were followed.

F. Electors, attempting to vote for plaintiff Files and following instructions of election officials, wrote plaintiff's name on masking tape, and on parts of the voting machine in an effort to cast votes for plaintiff Files, with the result that said votes were not counted.

G. In some instances it was physically impossible for a voter to cast his ballot for plaintiff Files on a voting machine.

A total of 1,522 persons who were registered voters in Pulaski County either advised Files by telephone, or in writing, or executed affidavits attesting that, although they were present at the polling places making every reasonable effort to case a ballot for Files, they were unable to do so. If all the electors desiring to do so, and presenting themselves at the polls had been permitted to cast ballots for Files and if all such ballots were counted, Files would have been declared elected.

During election day, Files made a complaint to the Pulaski County Board of Election Commissioners and requested, pursuant to Ark. Stat. Ann. § 3-1231 (Repl. 1976), that paper ballots be made available in order that electors might vote, but the request was refused.

Because of all the irregularities in the election which prevented Files from being elected chancellor, in the event the court believes it is unable to declare Files the winner of the election, another election ought to be held in Pulaski County, or, because so many electors were denied their constitutional rights under Art. 3, § 2, of the Constitution of Arkansas to participate in a free and equal election, the result of the election is uncertain, and it is impossible to determine who would have been selected in a free election.

Munson filed an answer, demurrer and motion to strike. He denied that the suit was properly instituted in accordance with Ark. Stat. Ann. § 3-1001 et seq (Repl. 1976) in that: the complaint was not properly verified by affidavit, and the plaintiff did not list the names of persons who actually cast ballots for Files which were not counted; the court was without jurisdiction to grant any of the relief requested due to defects in the complaint; and the complaint did not state facts sufficient to constitute a cause of action for the relief sought.

Before taking up the propriety of the trial court's action

on the demurrer, we point out that we consider the allegations appearing on the face of the complaint only. *Spaulding Mfg. Co.* v. *Chaudoin,* 87 Ark. 418, 112 S.W. 1087. A demurrer does not admit any *facts* that are not well pleaded. *Potter* v. *Citty,* 257 Ark. 276, 516 S.W. 2d 597; *Palmer* v. *Cline,* 254 Ark. 393, 494 S.W. 2d 112; *Caldwell* v. *St. Louis Joint Stock Land Bank,* 187 Ark. 832, 62 S.W. 2d 39. See also, *Rich* v. *Walker,* 237 Ark. 586, 374 S.W. 2d 476; *United Interchange, Inc.* v. *Rowe,* 230 Ark. 905, 327 S.W. 2d 547; *Wilburn* v. *Moon,* 202 Ark. 899, 154 S.W. 2d 7. Legal conclusions are not admitted by demurrer. *May* v. *Ryder Truck Rental, Inc.,* 264 Ark. 751, 574 S.W. 2d 264; *United Interchange Inc.* v. *Rowe,* supra; *Seubold* v. *Fort Smith Special School District,* 218 Ark. 560, 237 S.W. 2d 884; *Main* v. *Drainage District No. 2,* 204 Ark. 506, 162 S.W. 2d 901; *Wilburn* v. *Moon,* supra. A hearing, at which evidence was introduced, was held, according to an opening statement by Files' attorney, to familiarize the court with the nature of plaintiff's complaint and the operation of voting machines, but Files agreed that proceeding with the hearing did not constitute a waiver of the demurrer of the defendants. None of the evidence produced at this hearing can be considered on this appeal.[1] *Hoggard & Sons Enterprises, Inc.* v. *Russell Burial Ass'n.,* 255 Ark. 576, 501 S.W. 2d 613.

---

[1]We are not unaware of the rather ambiguous statement in *Simms* v. *Tingle,* 232 Ark. 239, 335 S.W. 2d 449, that might be taken to support an argument that oral evidence might be heard in testing the sufficiency of allegations in a complaint on demurrer. The statement in *Simms* followed a reiteration of the rule that when conclusions must be drawn from the evidence the issue is one for the jury. Then the court said: "Certainly in testing, on demurrer, the sufficiency of the allegations in the complaint as regards status, the analogy would be that evidence should be allowed to clarify the allegations.***" The statement was followed by a restatement of the rule that, on demurrer, the complaint, with all reasonable inferences deducible therefrom, is to be construed most strongly in favor of the plaintiff. There are many reasons, when considered collectively, that the statement is not authoritative. They are: the statement, supposedly based upon one preceding it and another following it, is a non sequitur; it is not supported by the citation of any authority; there is an absence of any Arkansas authority to support it; it appears to be dictum - the case involved the propriety of sustaining a demurrer, but oral evidence was not considered; the decision was by a court divided 4-3; and it has never been cited as authority for considering oral evidence in testing the sufficiency of allegations of a complaint on demurrer. To the extent that the statement might be taken as authority for hearing evidence on demurrer, it is overruled. Under the Rules of Civil Procedure, effective July 1, 1979, demurrers

In considering whether Files stated a cause of action, it must be remembered that election contests are governed entirely by statute. See *Reed* v. *Baker*, 254 Ark. 631, 495 S.W. 2d 849. The statement of generalities and conclusions of law is not sufficient to state a cause of action. *Jones* v. *Etheridge*, 242 Ark. 907, 416 S.W. 2d 306. A pleading which merely alleges the conclusion that the contestant received more legal votes than the contestee without alleging facts which would disclose that the result of the election was actually different from that shown by the returns does not state a cause of action. *Hill* v. *Williams*, 165 Ark. 421, 264 S.W. 964; *Robinson* v. *Knowlton*, 183 Ark. 1127, 40 S.W. 2d 450.

When the complaint of Files is stripped of generalities and conclusions, the remaining allegations fail to show that the result of the election should have actually been different. The returns showed that, in the two counties, Munson received a total of 24,566 votes and Files, a total of 22,835. The difference amounted to 1,731. Assuming, but not deciding, that the votes of the 1,522 persons named who said they offered to vote for Files but were unable to do so were counted as legal votes, Munson would still have 209 more votes that Files. The question then turns upon the only other allegation made as to any specific number of votes. This allegation was:

> The Pulaski County Board of Election Commissioners has recounted the votes in Pulaski County, at the request of the plaintiff, and has now certified the results as official on Tuesday, November 13, 1978, declaring that Lee Munson had received 23,320 votes and Jack Files had received 22,504 votes. The plaintiff, Jack Files, actually received 609 votes that the Pulaski County Board of Election Commissioners refused to count for him, so that the total vote actually cast for Jack Files was 23,113.

Nowhere in the complaint were the 609 votes or voters identified in any manner. There was not even any suggestion as to the precinct or precincts in which these votes were cast. The statement of this conclusion without any identification of

---

were abolished but questions theretofore reached by general demurrer may be raised by motion. See Rule 12(b)(6).

either the vote or the voters is not a sufficient factual allegation to state a cause of action. See *Jones* v. *Etheridge*, supra; *McClendon* v. *McKeown*, 230 Ark. 521, 323 S.W. 2d 542; *Crawford* v. *Harmon*, 149 Ark. 343, 232 S.W. 427.

There are no allegations in the complaint that bring this case within the purview of *Govan* v. *Jackson*, 32 Ark. 553, where the judges in one precinct had failed to canvass the returns of one box, or *Dixon* v. *Orr*, 49 Ark. 238, 4 S.W. 774, where the ballots had been counted in a particular precinct, but the returns had been stolen, lost or destroyed and those voters who participated were permitted to testify for whom their ballots had been cast.

Files also contends that he was prepared to show that the malfunctioning of voting machines and the failure of election officials to provide replacements were so pervasive that the certified result of the election is unreliable and the actual result uncertain, relying upon *Patton* v. *Coates*, 41 Ark. 111. Apparently, Files relies upon the alleged list of problems A through G set out hereinabove. These allegations are mostly statements of conclusions. They seem to relate to the 1,522 persons listed on exhibits to Files' complaint. There is no specification as to the precincts where the specific problems existed. They certainly are not adequate statements of facts to indicate a clear and flagrant wrong, in its nature diffusive in influences, calculated to effect more than can be traced and sufficiently potent to render the result so uncertain as to defeat a free election, as would be necessary under the rule stated in *Patton* v. *Coates*, supra. As stated in that opinion, if the wrong be not so general and serious, the court cannot safely proceed beyond the exclusion of particular illegal votes or the supply of particular legal votes rejected. So far as the allegations in this complaint go, they would justify at most only the addition of the particular votes of the 1,522 persons listed. Furthermore, the results reached in *Patton* would not have been reached had it not been for the elements of threats and acts of violence. *Jones* v. *Glidewell*, 53 Ark. 161, 13 S.W. 723, 7 LRA 831. Neither is there any allegation of coercion, which was essential to the holding in *Jones*.

Arnold sought to have the actions of the Boards of Elec-

tion Commissioners of the State of Arkansas and of Pulaski County and Perry County declared to be violative of Arkansas law and to have operated to deprive him, a citizen and resident and eligible voter of Pulaski County, and other persons, known and unknown, who were similarly situated, of their right to vote secured by the Fourteenth Amendment to the United States Constitution and Art. 3, § 2 of the Constitution of Arkansas. He also sought writs of mandamus to restrain the Secretary of State from canvassing the returns in the election for the office of Chancellor of District 6, Position 1, to restrain the Governor from issuing a commission for that office and to order the Pulaski County Board of Election Commissioners to conduct a new election for the office. In the alternative, he asked that the office be declared vacant. The demurrers of the Governor and of the Secretary of State were sustained and the complaint dismissed as to them. No notice of appeal from this order was filed within 30 days. Demurrers filed by the Boards of Election Commissioners were sustained and the complaint dismissed.

One of the grounds of the demurrers was that there was a defect of parties. Although the trial court did not address that ground, the sustaining of the demurrer was correct because neither Munson nor Files was made a party to the proceeding. Ark. Stat. Ann. § 34-2510 (Repl. 1962) requires that all persons who have or claim any interest which would be affected be made parties when declaratory relief is sought. Certainly Munson's interest would be drastically affected by such a proceeding. Failure to include such a party is fatal to a declaratory judgment action. *Block* v. *Allen*, 241 Ark. 970, 411 S.W. 2d 21; *Laman* v. *Martin*, 235 Ark. 938, 362 S.W. 2d 711. See also, *McFarlin* v. *Kelly*, 246 Ark. 1237, 442 S.W. 2d 183. Such a defect is reached by demurrer when it appears upon the face of the complaint, as it does here. *Cairns* v. *Witt*, 242 Ark. 735, 415 S.W. 2d 47; *Block* v. Allen, supra.

The action by Arnold can hardly be described as anything except an election contest, even though he protests that it is not, because he was not a candidate. An action to invalidate the results of an election is an election contest. *Rich* v. *Walker*, 237 Ark. 586, 374 S.W. 2d 476; *Curry* v. *Dawson*, 238 Ark. 310, 379 S.W. 2d 287. When there is a putative winner

in an election, the mere fact that one bringing suit only seeks to have the election declared void and does not seek the office for himself, or even for the candidate he espouses, does not keep the proceeding from being categorized as an election contest. *Witten* v. *Sternberg*, 475 S.W. 2d 496 (Ky., 1971). See also, *State* v. *Baxter*, 28 Ark. 129. Ordinarily, it is no valid objection, in an election contest, that legal votes were rejected, if they were not numerous enough to overcome the majority. *Swepston* v. *Barton*, 39 Ark. 549

Arnold contends that the election should be voided on the basis of Art. 3, § 2 of the Arkansas Constitution, providing that elections shall be free and equal, and that no power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage. He argues that this constitutional provision is self-executing and that, in the absence of legislative action to establish a procedure for enforcement of the rights established, the court may proceed according to the common law. He then asserts that mandamus is an appropriate common law remedy that a voter may pursue to enforce that right. We have several difficulties with appellant's approach. A major one is that mandamus may not be used to confer power or authority that does not otherwise exist or to direct one to do that which he has no power or authority to do. Unless it clearly appears that the one to whom the writ is directed has the power to do that which is directed, it should not be issued. *Wells* v. *Purcell*, 267 Ark. 456, 592 S.W. 2d 100 (1979). The Board of Election Commissioners has no power to call or hold a new election and for the court to direct it to do so would be to confer a power that does not exist. See *McFarlin* v. *Kelly*, supra; *McCoy* v. *Story*, 243 Ark. 1, 417 S.W. 2d 954; *Langston* v. *Johnson*, 255 Ark. 933, 504 S.W. 2d 349. Furthermore, it is the function of the legislature, not the courts, to create rights of action, or provide relief where means of redress have not been designated. *McFarlin* v. *Kelly*, supra.

Arnold asserts, however, that the court has the power to declare the election void and the office vacant. He argues that malfunction of the voting machines effectively excluded and rejected the votes of members of the class composed of those who wanted to vote for Jack Files by write-in ballot and thus

was analogous to cases where there was discrimination on account of race.

Arnold's allegations were that the voting machines used in the election would not perform their function of registering all lawful votes cast in the election for Files, and that the commission failed to be ready to deliver paper ballots, ballot boxes or replacement machines upon notice that a voting machine was out of order or failed to work, and that the election commissioners received notice that numerous machines were out of order or failed to work to record votes for Files. The specification of difficulties encountered by Arnold and his class was identical to those stated in Files' complaint. There is no allegation that the result would have been different if the votes of Arnold and the class he represents had been counted.

The authority relied upon by Arnold for voiding the election, even in the absence of any allegation that the result would have been different had the votes of all his class been counted, is *Bell* v. *Southwell*, 376 F. 2d 659 (5 Cir., 1967). That action was brought as a class action by the defeated candidate. Voting lists and voting booths were racially segregated. The racial discrimination was described as state-imposed and state-enforced, gross, unsophisticated, significant and obvious and its nature as gross, spectacular and completely indefensible. Arnold's allegations do not bring this case within the category dealt with in *Bell*. There is no allegation that the malfunctions of the voting machines or the failures of the election officials to provide remedies were fraudulent, or an intentional or deliberate effort to disenfranchise any voters or to discriminate against anyone. We do not find *Bell* persuasive here. Cf. *Crawford* v. *Harmon*, 149 Ark. 343, 232 S.W. 427; *Sims* v. *Holmes*, 191 Ark. 1033, 88 S.W. 2d 1012.

Arnold also relies upon *Foulkes* v. *Hays*, 85 Wash. 2d 629, 537 P. 2d 777 (1975). That case is quite different. The governing statutes as to the powers of the court there are broader than ours. Equity jurisdiction was exercised there and was proper under the Washington constitution. In Arkansas, equity has no jurisdiction of any case involving the right to vote, or any political right, even where fraud is alleged. *Catlett*

v. *Republican Party*, 242 Ark. 283, 413 S.W. 2d 651; *Walls* v. *Brundidge*, 109 Ark. 250, 160 S.W. 230, Ann. Cas. 1915C 980; *Hester* v. *Bourland*, 80 Ark. 145, 95 S.W. 992; *Hutto* v. *Rogers*, 191 Ark. 787, 88 S.W. 2d 68; *Rich* v. *Walker*, 237 Ark. 586, 374 S.W. 2d 476; *Miller* v. *Tatum*, 170 Ark. 152, 279 S.W. 1002. There is no allegation, however, in Arnold's complaint that anyone acted fraudulently. Arnold relies entirely on the assertion that an unknown number of people were deprived of their right to vote for Files as a ground for voiding the election. Nowhere in Arnold's complaint does he allege that the irregularities enumerated were sufficient to render the outcome of the election really uncertain and such an inference drawn from those allegations would be strained indeed. Assuming that he and his class had standing to bring the suit, his allegations did not state a cause of action. *Baker* v. *Hedrick*, 225 Ark. 778, 285 S.W. 2d 910. In the cited case, we pointed out that it was a serious matter to void an entire election. We also stated that we had held in *Patton* v. *Coates*, 41 Ark. 111, that, in order to do so, the wrong must be clear and flagrant, diffusive in its influences, calculated to effect more than can be traced and sufficiently potent to render the result clearly uncertain. Otherwise, the court cannot safely proceed beyond the exclusion of particular illegal votes or the supply of particular legal votes rejected. It is desirable that election returns have a high degree of stability and finality. *Reed* v. *Baker*, 254 Ark. 631, 495 S.W. 2d 849. An election should not be voided for any wrong less grave than that described in *Patton*. The purpose of any contest of an election is to determine which candidate received the greatest number of votes, and we have held that exclusion of votes, even if erroneous, is not prejudicial unless there is a showing that, if counted, those would materially affect the result in an election contest. *Horne* v. *Fish*, 198 Ark. 79, 127 S.W. 2d 623. Appellant's allegations do not establish that the result was really uncertain or name any particular votes, except his own, which could have been supplied in the proceeding. This would not be sufficient to justify the court in setting aside the election. See *Wilson* v. *Ellis*, 230 Ark. 775, 324 S.W. 2d 513.

There is no constitutional or statory authority for one in the status of Arnold to bring this suit. Even though it was attired in declaratory judgment raiment, the action was, in fact,

an election contest, which is a special proceeding authorized only in accordance with constitutional or statutory provisions. *Curry* v. *Dawson*, 238 Ark. 310, 379 S.W. 2d 287; *Baxter* v. *Brooks*, 29 Ark. 173. See also, *Storey* v. *Looney*, 165 Ark. 455, 265 S.W. 51.

The judgment is affirmed.

HICKMAN, J., concurs.

MAYS, J., not participating.

DARRELL HICKMAN, Justice, concurring. I agree that the appellant's claim must fail for the reasons given by the majority. In an election contest one must be able to demonstrate that the results will be different; in the suit filed by Jack Files, admittedly there are not enough alleged votes for him to make a difference. It could only be that Files' suit, added with the suit of Arnold, alleging generally other votes for Files, that a valid contest would exist, and the complaint of Arnold must fail for the reasons given by the majority.

However, the majority opinion in my judgment fails to answer certain questions raised in this case which ought to be answered. Quite often in matters of public interest we rule on issues even though they may have become moot. *Cain* v. *CarlLee*, 171 Ark. 155, 283 S.W. 365 (1926).

The first issue is how do you make a case in an election contest where voting machines are used. Specifically, since the people who attempt to write in a name are unable to do so, is an affidavit signed by those people sufficient under the Arkansas law to set up an election contest? Usually election contests present a question of a voter's ballot being voided; there exists a ballot, evidence of a vote, to count or not count. The appellee argues that Files' complaint should be dismissed because there is no evidence of votes cast. If the appellee is correct, then a person qualifying as a write-in candidate in a county that uses voting machines might never be able to successfully challenge an election; there are no paper ballots when machines are used and usually all you may have is a statement by voters that they tried to vote. I am of the view

that, in terms of procedure, the appellant did file a proper complaint for an election contest.

The second question that we should answer is regarding the use of voting machines and the failure of those machines in an election like that before us. This election was very close. There is too much evidence of the failure of the machines or irregularities in the election process to ignore. In some instances tape was placed over the slot in the machines where Files' name was supposed to have been written in; in other instances there is evidence that the machines were jammed in some way, voters being unable to write in Files' name. The evidence of these irregularities is sufficient in my judgment to justifying our defining the rights of a write-in candidate in a county that uses voting machines.

I am one of those people who are suspicious of most all machines. It has been my experience machines tend to fail you when you need them most. I realize such an attitude is anathema to engineers and such people, however, this case is a good example of just such a failure. The voting machines used were not designed with a write-in candidate in mind and they failed in this instance to provide the write-in candidate a fair chance. It is our duty to see that the state's valid and compelling interest in the fairness, efficiency and the orderly operation of its election machinery, as well as the integrity of the electoral process is protected. *Walker* v. *Jackson*, 391 F. Supp. 1395 (E.D. Ark. 1975).

A write-in candidate does not have much of a chance anyway, as everyone in politics knows. In a case such as this where the election is close, it is especially frustrating to the loser who happens to be a write-in candidate. I do not expect the voting machines to function any better in future elections. Consequently, the question we should answer is, what remedy, if any, should be available to future candidates? I have concluded there must be an alternative to the machines. Paper ballots ought to be furnished. I know of no other satisfactory alternative. Although the proponents of voting macines would probably disagree, there is enough evidence of failure by people, the process, or the machines in this case

to convince me that an alternative should exist to preserve the integrity of our electoral process.

I do not mean to say write-in candidates are entitled to anything special. They are not. In fact, the law is pretty well designed to discourage write-in candidates but the law should not make it virtually impossible for a write-in candidate to get elected.

While I agree with the results the majority reaches, I respectfully suggest that it has failed to address the most important issues in this case so far as the law is concerned.