Mr. H.D. Luck Chair Clark County Election Commission 858 North 12th Arkadelphia, Arkansas 71923
Dear Mr. Luck:
This is in response to your request for an opinion on two questions, restated below:
 1. May a county board of election commissioners assess against and collect from each political entity holding elections (such as counties, school districts, and cities) (a) a charge sufficient to pay the expenses of holding each election, and (b) a fee to cover a share of the commission's capital costs and operating overhead, including the election coordinator's pay?
2. What is the definition of the term "majority party"?
With respect to your first question, you state that the Clark County Board of Election Commissioners has experienced difficulty in obtaining sufficient funds from the Clark County Quorum Court to meet overhead costs and comply with state election laws. You state that the funding method described in your first question is desirable because it would provide autonomy for the County Board of Election Commissioners.
In my opinion, existing law governs, and provides an exclusive mechanism for, the payment of election expenses. Two statutes likely come into play most often. Arkansas Code Annotated § 7-5-104 (Repl. 1993) provides in part:
 All expenses of general elections for presidential, congressional, state, district, county, township, or municipal offices in this state shall be paid by the counties in which they are held. However, any city or incorporated town shall reimburse the county board of election commissioners for [a portion of] the expenses of any election. . . .
The statute goes on to specify a formula for the determination of the portion of election expenses to be reimbursed by cities and towns. This office has opined that the second sentence of A.C.A. § 7-5-104 applies only to general elections and that the counties are generally responsible for the expenses of special elections. See Ops. Att'y Gen. 94-399 and 93-125 (copies enclosed).
Arkansas Code Annotated § 6-14-118 (Cum. Supp. 1993) provides in part:
 (a) In school elections, the school districts of the county shall reimburse the county board of election commissioners for the entire cost of the election. . . .
The statute goes on to specify how election expenses are apportioned among each school district in the county.
In addition, Act 901 of 1995 amends A.C.A. § 7-7-201 to provide that the cost of party primaries shall be borne by the state. Finally, with respect to election expenses, the various statutes providing for other types of elections (such as wet-dry, annexation, and improvement district votes) generally assign responsibility for payment of election expenses.
In my opinion, the statutes cited or referred to above constitute a comprehensive and exclusive scheme for the payment of election expenses, and a county board of election commissioners may not alter that scheme.
With respect to capital costs, it is my opinion that a county board of election commissioners has no general authority to expend funds on capital items.[1] In Op. Att'y Gen. 89-272 (copy attached), this office considered whether a county board of election commissioners could purchase electronic voting machines without specific authorization to do so contained in a statute or ordinance, and concluded that it could not.
Similarly, in Union County v. Union County Election Comm'n,274 Ark. 286, 623 S.W.2d 827 (1981), the court held the board of election commissioners to be an agency of the county whose expenditures are subject to the control of the quorum court. The court held that:
 an agency of county government which performs a function imposed by law must live within its appropriation unless that appropriation is unreasonable. Appropriations made by the quorum court are presumed to be reasonable and the burden rests on the entity filing the claim in excess of an appropriation to prove unreasonableness.
Union County, 274 Ark. at 291.
If a county board of election commissioners has no general authority to expend funds for capital items, it follows that the board may not charge a fee to other political entities to cover the cost of such items. In my view, however, to the extent capital items must be obtained and "overhead expenses" (other than salaries, discussed below) must be incurred in order for the board to fulfill its statutory responsibilities (primarily to hold elections), the cost of such items and such expenses may fairly be characterized as election expenses and obtained from counties, cities, etc., in the same manner as are other election expenses.
With respect to the salaries of the election coordinator and any other person who is not an election judge, clerk, or sheriff employed pursuant to the authority granted in A.C.A. § 7-4-107 (Repl. 1993), it is my opinion that such persons are employees of the county, subject to hiring and firing by the county judge. See Ops. Att'y Gen. 93-176 and 91-204. It accordingly is the right and responsibility of the county, rather than of the board of election commissioners, to provide for the salaries of such individuals.
With respect to your second question, the term "majority party" is defined in A.C.A. § 7-1-101(6) (Repl. 1993) as "that political party in the State of Arkansas whose candidates were elected to a majority of the constitutional offices of this state in the last-preceding general election."[2] The introductory language of A.C.A. § 7-1-101 indicates that the definitions therein are for terms "as used in this act, unless the context otherwise requires. . . ." The term "this act" means Act 465 of 1969. A note to A.C.A. § 7-1-101 indicates the code sections in which Act 465 is codified, and the term "majority party" is used only in certain of such sections. See A.C.A. §§ 7-1-101, 7-3-104, 7-4-102,7-4-103, and 7-4-107. [The foregoing definition and the contexts in which the term "majority party" is used in the statutes suggest, and it is my opinion, that there is, at any given time, only one "majority party" in the state and that such status is determined entirely by the results of races for constitutional state offices in the last-preceding general election, and not in any way by the results of races for local offices. Although there are no reported cases squarely addressing the question, those decisions in which the meaning of the term was relevant are consistent with the foregoing opinion. See, e.g., Spradlin v. ArkansasEthics Comm'n, 314 Ark. 108, 858 S.W.2d 684 (1993), Rockefeller v.Purcell, 245 Ark. 536, 434 S.W.2d 72 (1968), Catlett v. Republican Partyof Ark., 242 Ark. 283, 413 S.W.2d 651 (1967).]
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] The statutes contain some limited exceptions: A.C.A. § 7-4-107(b) (Repl. 1993) requires county boards of election commissioners to provide voting booths in counties using paper ballots; A.C.A. §7-5-211(a)(2)(A), as amended by Acts 601, 946, and 963 of 1995, requires them to provide ballot boxes with locks and keys; and A.C.A. § 7-5-505
(Repl. 1993) implies that they may purchase voting machines. But see Op. Att'y Gen. 89-272 (discussed in the accompanying text) with respect to A.C.A. § 7-5-505.
[2] Acts 946 and 963 of 1995, which appear to be substantially identical, amend A.C.A. § 7-1-101 effective January 1, 1996, but do not amend the existing definition of "majority party."