Pamela WALKER et al., Plaintiffs,

v.

Charles JACKSON, Clerk and Permanent Voter Registrar of Pulaski County, Arkansas, Individually, and all other persons in the State of Arkansas who are County Clerks and Permanent Registrars, Defendants.

No. LR-74-C-321.

United States District Court,
E. D. Arkansas, W. D.

April 18, 1975.

Thomas A. Glaze, Little Rock, Ark., for plaintiffs.

Tom Tanner, Deputy Pros. Atty., Louis Smith, Asst. Atty. Gen. of Arkansas, Little Rock, Ark., for defendants.

Before WEBSTER, Circuit Judge, and HENLEY* and EISELE, District Judges.

## MEMORANDUM OPINION

This is a suit in equity for declaratory and injunctive relief brought by four female plaintiffs who are citizens and qualified electors of Pulaski County, Arkansas, who sue for themselves and all other women in Arkansas similarly situated. The defendant is Charles Jackson who is the County Clerk and ex officio Permanent Voter Registrar of Pulaski County. He is sued as an individual County official and as the representative of a class consisting of himself and all of the other seventy-four County Clerks and Voter Registrars in Arkansas.[1]

Involved in the case is plaintiffs' attack on the federal constitutionality of Section 6(a)(1) of Amendment 51 to the Constitution of the State of Arkansas, which amendment sets up a system of permanent registration for Arkansas voters.

Every qualified person who desires to vote in Arkansas must execute a Voter Registration Affidavit which is kept on file in his home County. Section 6(a)(1) of the Amendment provides that each affidavit must reflect the given name, middle name or initial (if any), and the last name of the registrant. Further, the section goes on to provide that in the case of a woman her name as it appears on the affidavit must be prefixed by the word "Miss" or "Mrs." so as to reflect her current or past marital status. There is no comparable requirement for male registrants. Plaintiffs claim that the section, as written and applied, is violative of the Ninth, Fourteenth and Nineteenth Amendments to the Constitution of the United States. Plaintiffs pray for a declaratory judgment in line with their contentions, temporary and permanent injunctive relief, and an award of costs and a reasonable attorney's fee.

Due to the nature of the relief sought a District Court of three Judges has been convened as required by 28 U.S.C. A. § 2281.[2] The cause has now been submitted on the pleadings, orders entered by the initiating Judge as the case has progressed, affidavits and exhibits submitted by the plaintiffs which have not been controverted, plaintiffs' motion for summary judgment and a memorandum brief submitted on behalf of plaintiffs by their attorney.

The case has two distinct aspects. The first of those aspects is a direct attack on the requirement that the name of a female registrant must be prefixed by "Miss" or "Mrs." as the case may be.

---

* By designation.

1. Proper notice of the pendency of the action has been published as provided by Rule 23 of the Federal Rules of Civil Procedure. None of the seventy-four other Clerk-Registrars has chosen to participate in the case, and none has asked to be excluded from it.

2. The suit was filed in October, 1974; the application for temporary relief was heard by the initiating Judge sitting alone as authorized by 28 U.S.C.A. § 2284(5), and he granted temporary relief designed to permit plaintiffs and other women similarly situated to register and vote in the General Election due to be held on November 5, 1974. The initiating Judge has also entered a number of interlocutory orders in the case. All of the actions of the initiating Judge were subject to the approval of the full court, and all of those actions have met with the approval of the other members of the Court.

Plaintiffs say that this requirement directly discriminates against women who do not desire to reveal their present or past marital status when registering to vote, and they claim that the alleged discrimination is unconstitutional. The requirement just mentioned may conveniently be called the "prefix requirement."

The second aspect of the case is not so much an attack on Section 6(a)(1) as written as on the construction that has been placed upon it by the individual defendant. As has been seen, the section requires that the full name of a voter appear on his or her registration affidavit. The defendant construes that provision of the section as requiring a married woman to register under her husband's surname and a divorced woman to register in the surname of her former husband.[3] Mr. Jackson's construction of the section will be referred to as the "name requirement" to contrast it to the "prefix requirement" which is written into the section and with respect to which there is no ambiguity. Plaintiffs contend that the name requirement violates federally protected rights of married women to continue to use their maiden names and to register under those names to vote. During the summer and fall of 1974 defendant Jackson undertook to enforce his name requirement, and his efforts to that end brought him into confrontation with plaintiffs. And this suit was filed when the defendant refused to abandon either the prefix requirement or the name requirement.[4] The defendant denies that plaintiffs are entitled to any relief and asks that the complaint be dismissed in its entirety.

The controlling facts are not in dispute.

We find that the plaintiffs, Scholle and Walker, are married women who have retained and customarily and regularly use their maiden names; we also find that plaintiff, Harris, is a divorcee who has resumed her maiden name. There is nothing to indicate that the names which those plaintiffs use are not sufficient to identify them as individuals or that they are not known by those names. The fourth plaintiff, Sister Leona Holting, is a Roman Catholic nun. Assuming that she has never been married, her maiden surname continues to be her surname.

All four plaintiffs are qualified electors and eligible to register and to remain registered as voters in Pulaski County. The two married plaintiffs and the divorced plaintiff desire to be registered as voters under their maiden surnames and without any prefixes indicating their marital or former marital status. Presumably the fourth plaintiff desires to be registered simply as "Leona Holting" without any prefix indicating her marital status or lack of it. We find that the plaintiffs are acting in good faith and without any fraudulent intent in the area of voter registration or voting.

Basically, voter registration in Arkansas is permanent. However, changes in registration are required if a registrant moves from one voting precinct to another or if there is a change in the name of the registrant.

Prior to the genesis of the controversy with which we are concerned, plaintiff Scholle had been permitted to register as "Ms. Linda Marshall Scholle," and plaintiff Holting had been permitted to register as "Sr. Leona Holting."

It appears from the materials before us that the controversy arose in the late summer or early fall of 1974 and imme-

---

3. As used herein the term "married women" will in general include divorcees. Two of the plaintiffs are married women who retain their maiden names; another plaintiff is a divorcee who has resumed her maiden name; and the fourth plaintiff is a Roman Catholic nun. Presumably Mr. Jackson's construction of the section would require a widow to register under her late husband's surname.

4. The record does not disclose whether any other Clerk-Registrar in Arkansas makes a name requirement comparable to that which has prevailed in Pulaski County.

diately involved the plaintiffs, Walker and Scholle, who are both lawyers.

According to the affidavit of Linda Scholle she first registered in May, 1973 at a time when she was unmarried. As indicated, she registered under her maiden name "Linda Marshall Scholle," and was permitted to prefix her name with "Ms." rather than "Miss." She married in April, 1974 and retained her maiden name; since she had not changed her name she did not undertake to have her registration changed to reflect her marriage.

The verified statement of Pamela Walker establishes that she originally lived in Union County, Arkansas, but moved to Pulaski County in 1974. She undertook to change her registration from Union County to Pulaski County and to be registered in this County under her maiden name. Defendant Jackson, who seems to have known that she was a married woman, refused to register her under that name in spite of the fact that he admitted awareness of an opinion from the Attorney General of Arkansas, rendered in April, 1974, to the effect that "there is no Arkansas law which automatically changes a woman's name to that of her husband upon marriage."

Plaintiff Walker presented herself for registration again about August 12, 1974; she was again refused registration and appealed to the Pulaski County Board of Election Commissioners which has some jurisdiction with respect to voter registrations. The County Board sought an opinion from the Attorney General with respect to Walker's case and also with respect to the registrations of women whose names were prefixed by "Ms." and to the registrations of Roman Catholic nuns whose names were prefixed by "Sr." The inquiry from the County Board specifically referred to plaintiffs Walker and Scholle.

On October 8, 1974 the Attorney General rendered his opinion No. 74-123; a copy of his opinion is in the record as an exhibit to the statement of Pamela Walker. The views of the Attorney General may be summarized as follows:

a. Under Arkansas law a married woman may retain her maiden name, and if Pamela Walker did not change her name when she married she was entitled to be registered under her maiden name.

b. The prefix requirement which has been described is unconstitutional as being discriminatory against women as a sex. The Attorney General did not consider that the requirement violated the Nineteenth Amendment, but he evidently was of the opinion that it violated the Equal Protection Clause of the Fourteenth Amendment.

c. Plaintiff Scholle was not required to change her name when she married and was not required to re-register under her husband's surname.

On October 9, 1974 the Chairman of the County Board of Election Commissioners advised Clerk-Registrar Jackson of the Attorney General's opinion and that the Board intended to abide by it.

Defendant was not willing to accept the ruling of the Attorney General and applied for advice to the Prosecuting Attorney of Pulaski County, an officer who at times serves as counsel for elected county officers.

On October 11, 1974 a Deputy Prosecuting Attorney advised Mr. Jackson that a married woman was not required to use her husband's surname for registration purposes. As to the prefix requirement, the opinion stated that the requirement is mandatory as far as the wording of Amendment 51 was concerned; the opinion then went on to mention the opinion of the Attorney General to which reference has been made and called attention to the fact that the opinion had been addressed to the Board and not to the defendant. And, finally, the defendant was advised to follow the prescribed form of registration unless and until he received an Attorney General's opinion addressed to him and authorizing or advising the acceptance of applications of women on

which terms other than "Miss" or "Mrs." appeared.

Perhaps a few hours before the opinion of the Deputy Prosecuting Attorney was released, plaintiff Walker and plaintiff Harris presented themselves for registration and were refused. Defendant Jackson stated that he was not required to follow the Attorney General's opinion, and that he was seeking advice from the office of the Prosecuting Attorney. On the same day Walker and Harris were advised that since the defendant would not follow the Attorney General's opinion they should take their case to court. That advice was given to them by the Executive Secretary of the Board.

On October 14, 1974 Walker, accompanied by her attorney Thomas Glaze, who specializes on Arkansas election laws, went to defendant's office to see if he had changed his mind. According to Walker, defendant's response was as follows:

"   .   .   .   Defendant stated at that time that plaintiffs could register any way they wanted as long as he did not know about it. Defendant said that plaintiffs still had to swear to being 'a Miss' or 'a Mrs.', and that it was too bad that there was not a separate designation for divorcees or unremarried widows. Defendant said that as a constitutional officer he would have to go through the voter registration files after November and 'disenfranchise' those persons illegally registered as 'Ms.,' 'Sister,' 'Reverend,' or anything else besides Miss or Mrs. He also said that he would have to search out the files for women who illegally used their maiden surname as their marital name."

The affidavit of the divorcee, Catherine Harris, reflects that she first came to Little Rock as a married woman in January, 1974 and registered under the surname of her husband. Later in the year she moved to another voting precinct and she and her husband were divorced. Her move from one precinct to another required her changing her registration, and she undertook to do so on October 11 under the name "Catherine Harris." The expression of that desire gave the employee who was taking her application no trouble; she simply asked whether Harris wished to prefix her name with "Miss" or "Mrs." Plaintiff Harris said that she wanted to be registered simply as "Catherine Harris." Defendant Jackson was called to the scene and ultimately refused to register plaintiff Harris.

The record contains the affidavits of two other women who are not plaintiffs in the case in which affidavits they describe difficulties that they experienced with the defendant in the field of voter registration. However, we see no useful purpose in abstracting those affidavits. We would emphasize that none of the affidavits in the record has been controverted by the defendant.

The temporary restraining order issued by the originating Judge on October 24, 1974 did not reach the prefix requirement of Section 6(a)(1); it did affect the name requirement. The operative language of the order is as follows:

"Accordingly, it is ORDERED that the defendant, Charles Jackson, shall reopen voter registration from the beginning of office hours Friday morning, October 25, 1974, until the ending of office hours on Monday, October 28, 1974, for the purpose of registering all women who were denied the right to register because they did not use their husbands' name, to register them in whatever name they currently use, and to register them with either the prefix 'Miss' or the prefix 'Mrs.' whichever they so desire.

"This order shall remain in force until revoked by the full court of three Judges."

The record does not reveal whether or to what extent the defendant has undertaken to enforce either the name requirement or the prefix requirement since the temporary restraining order was entered. From what has been said to this

point, however, it is clear that prior to the entry of that order the defendant was insisting on enforcing both requirements notwithstanding the opinion of the Attorney General of Arkansas; that he had denied registration to plaintiffs Walker and Harris; and that he was threatening to purge the voter lists of those who had been permitted to register ·otherwise than in accordance with both requirements.

There is nothing before us to indicate that the defendant has changed his position with respect to either requirement, and it is plainly foreseeable that if the complaint in this case is dismissed without plaintiffs obtaining any relief for themselves and for the class which they represent the defendant will resume enforcement of both requirements.

## I.

As to the name requirement with which we are concerned, if that requirement were spelled out in Amendment 51 or if Clerk-Registrars had authority under Arkansas law to prescribe the requirement, the constitutional question raised by plaintiffs would be a significant one.

More and more women are insisting today that they have a legal right to choose their own surnames and are no longer bound by the old common law rule which has prevailed for centuries in England and in this country that upon marriage a woman takes the surname of her husband.[5] And it may be assumed arguendo that a State restriction on such right could in certain circumstances amount to a constitutional deprivation prohibited by the Fourteenth Amendment.

However, the Supreme Court of the United States has recognized that a State may constitutionally require a married woman to use her husband's surname as her own for certain pur-

poses, as for example obtaining a driver's license, if the State has a sufficiently compelling interest in imposing the requirement. Forbush v. Wallace, Governor, 405 U.S. 970, 92 S.Ct. 1197, 31 L. Ed.2d 246 (1972), aff'g without opinion, Forbush v. Wallace, Governor, 341 F. Supp. 217 (M.D.Ala.1971).

That case involved a regulation of the Alabama Department of Public Safety requiring a married woman applying for a driver's license to use her husband's surname rather than her maiden surname. The regulation was based on the common law rule in effect in Alabama that when a woman marries she takes the name of her husband. In a class action the female plaintiff attacked both the common law rule and the regulation. The Three Judge District Court held that the State had a sufficient interest in the accuracy of driver registrations to make the requirement, and it dismissed the complaint. As has been seen, the Supreme Court affirmed the judgment of the District Court.

■ As a federal statutory Court sitting in Arkansas recognized recently, the State has a valid and compelling interest in the fairness, efficiency, and orderly operation of its election machinery, and in the integrity of the electoral process. Lendall v. Bryant, 387 F.Supp. 397, 401–02 (E.D.Ark.1975), and cases there cited.

■ It goes without saying that Arkansas has a right to set up a voter registration system and to require would-be registrants to make such disclosures as will enable · registration and election officials to identify them and to guard against such frauds as double registration and double voting. Certainly the State can constitutionally require a registrant to disclose his or her full and correct name, a disclosure which in most instances will automatically reveal the sex of the registrant. And it can be ar-

5. See discussions of the subject in Daum, "The Right of Married Women To Determine Their Own Surnames," 1974, 8 University of Michigan Journal of Law Reform, 63, and McDougall, "The Right of Married Women To Determine Their Own Names Irrespective of Marital Status," 1974, The Family Law Reporter, The Bureau of National Affairs, Vol. 1, No. 5.

gued that the power of the State goes far enough to require a married woman to use her husband's surname when registering to vote.

We find it unnecessary to decide that question, however, because we are satisfied that the defendant's name requirement is neither required nor justified by the law of Arkansas.

Amendment 51 does not define the term "last name" as it appears in Section 6(a)(1), and the Amendment does not give the Clerk-Registrars any authority to define that term by regulation or otherwise.

■■ We think it is fair to say that Arkansas, like Alabama, generally follows the common law rule that when a woman marries she takes the surname of her husband. However, Arkansas recognizes another common law rule that in the absence of fraud a person can change his name at will. Clinton v. Morrow, 220 Ark. 377, 247 S.W.2d 1015 (1952). And in the earlier case of Kirk v. Bonner, 186 Ark. 1063, 57 S.W.2d 802 (1933), the Court stated that the purpose of a name is to designate a person, and that the purpose is accomplished when the name is that by which a person is known or called; and the Court went so far as to say that a person may be known by two names in the same County.

With respect to divorced women, the decrees of divorce frequently provide that they may resume their maiden name; such provisions, however, would seem to be nothing more than a recognition of a right that would exist in any event. In that connection, in 24 Am. Jur.2d, Divorce and Separation, § 882, p. 1002, it is said that since ordinarily there is no property in a name and a person may assume any name he or she desires, "the name which a divorced woman shall bear would seem to be a matter of choice with her."

The common law rule that a married woman takes her husband's surname was based on immemorial custom and usage in England and in this country. As far as we know there has never been any such uniform custom and usage as would dictate a common law rule that a divorced woman is required to retain the name of her former husband against her wishes. Historically, some divorced women have retained their married surnames until remarriage or death; others have resumed their maiden names.

When the case was before the initiating Judge in connection with the temporary restraining order, he said with respect to the name requirement, "The Court finds that plaintiffs are entitled under Arkansas law to use whatever name they care to use as long as the use is not for fraudulent purposes."

■ As has been seen, that is also the view of the Attorney General of Arkansas, and it is also the view of this full Court.

We hold, therefore, that the name requirement that has been discussed is invalid as a matter of Arkansas law, that there should be a declaratory judgment to that effect, and that the defendant individually should be enjoined from undertaking to enforce it in the future. However, since there is no evidence here that other Clerk-Registrars in Arkansas have made any similar requirement, we see no reason to enjoin them as far as the requirement in question is concerned.

## II.

The attack on the prefix requirement of Section 6(a)(1) of Amendment 51 cannot be disposed of on non-federal grounds. It is written into the amendment, and as long as it stands, it is binding on every Clerk-Registrar in Arkansas.

The view that we take of the requirement enables us to confine our discussion to the claim of plaintiffs that the requirement discriminates against women as an identifiable class of citizens in violation of the Equal Protection Clause of the Fourteenth Amendment.

There is no question that throughout most of our history sex has been consid-

ered to be a legitimate basis for legislative differentiation between men and women in a number of areas. Today the constitutional validity of many differentiations based on sex is being seriously questioned. And in Forbush v. Wallace, *supra*, 341 F.Supp. at 220, the Court observed that "no area of the law seems more unsettled today than the guarantees and the protection of women's rights under the Constitution."

█ It is obvious that Section 6(a)(1) places a requirement of disclosure on women which it does not impose on men. However, not every slight burden which a State may place exclusively upon one class of citizens inflicts a constitutional wound, even though in broad sense the burden may be considered "discriminatory."

█ In determining whether a legislative differentiation between classes is unconstitutionally discriminatory regard must frequently be given to balancing the interest of the State in making the distinction and the interest of the complaining class in being free of it. And an enactment which places a burden on one class of citizens exclusively may be constitutional where the burden is slight or de minimis in comparison with the interest of the State in imposing the burden. Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); Ogren v. Miller, 373 F.Supp. 980, 981–82 (W.D.Ky.1973).

Conceding that the burden that the prefix requirement places upon female applicants for registration is slight, although obviously offensive to some and perhaps many of such applicants, the trouble that we have with the requirement is that the State has no conceivable interest in imposing it. It has no reasonable or rational basis. Assuming that the State needs to know whether a registered voter is a male or female, we cannot see anything that the State has to gain by knowing whether a female voter is single, married, divorced, or a widow. Her marital status is simply irrelevant as far as her qualifications to vote are concerned and has nothing to do with the efficiency or integrity of the electoral process. It is simply an arbitrary requirement inserted into Section 6(a)(1) for no apparent reason.

█ We hold, therefore, that the prefix requirement violates the Equal Protection Clause of the Fourteenth Amendment; that we should enter a declaratory judgment to that effect; and that an injunction against its future enforcement should be entered which will be applicable to the individual defendant Jackson and to the members of the class which he represents.[6]

### III.

There remains for consideration the prayer of plaintiffs for an award of costs and an attorney's fee.

█ The costs involved in the case are not large, and we find that the defendant should be taxed with them. The costs we allow will include the Clerk's filing fee, the Marshal's fee for effecting service on the defendant, and the expense incurred by plaintiffs or their attorney in publishing the notice of the pendency of the suit as a class action.

We assume that we have the power to assess a reasonable attorney's fee against the defendant. The question of whether we should award a fee is not free from difficulty. Counsel for plaintiffs argues that a fee should be allowed because the suit is in the public interest and also because the conduct of the defendant has been characterized by recalcitrance and bad faith. Counsel cites in support of his position Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed. 2d 593 (1970); Newman v. Piggie Park Enterprises Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.), aff'd, 409 U.S. 942, 93 S.Ct. 290, 34 L. Ed.2d 215 (1972); and Bradley v.

---

6. In striking down the prefix requirement we are again in agreement with the October, 1974 opinion of the Arkansas Attorney General.

School Board of Richmond, 53 F.R.D. 28 (E.D.Va.1971).

A suit to invalidate State legislation or administrative action which encroaches upon fundamental or substantial rights guaranteed to citizens by the Constitution of the United States are *pro bono publico*, of course.

 We think that in most circumstances a local official should not be subjected to an attorney's fee merely because he has in good faith defended a State law which he has a right to presume to be constitutional and which he is bound by his oath of office to enforce. However, an award of a fee may be appropriate where the official in question obstinately or in bad faith persists in a course of conduct which he knows or should know violates federally protected rights.

If the only requirement that had been made by the defendant in this case was that married and divorced women use the surnames of their husbands or former husbands when registering to vote, we would have little difficulty in assessing an attorney's fee against him, although we would not be inclined in any case to award a large fee.

The name requirement appears to have been imposed by the defendant individually; it was not imposed by the statute. The defendant persisted in imposing the requirement after he was made aware of the fact that in both April and October, 1974 the Attorney General of Arkansas had said that it was invalid and even after he had been advised to the same effect by the Deputy Prosecuting Attorney of Pulaski County whose advice defendant himself had sought.

However, the case also involves the prefix requirement which was imposed by Amendment 51 itself and which, as we have indicated, was not particularly burdensome on female registrants. The plaintiffs were objecting to both of the requirements in question, and there is no assurance that had defendant waived his name requirements plaintiffs would have been willing to comply with the prefix requirement.

Although the defendant might have done well to have followed the October opinion of the Attorney General that the prefix requirement was unconstitutional, defendant was not required to do so by Arkansas law. And only a few days before this suit was filed on October 16, 1974 defendant had been advised by the Deputy Prosecuting Attorney to enforce Section 6(a)(1) of the Amendment as written unless he was personally advised not to do so by the Attorney General.

 While the question of whether an attorney's fee should be awarded in all of the circumstances of the case may be deemed a close one, we consider that in the circumstances there should not be such an award, and the application therefor will not be granted.

A decree in accordance with the foregoing will be entered.