Randall SMITH, Plaintiff and Appellant,

v.

Jack MAHONEY, in his capacity as Director of the Financial Responsibility Division, Utah Department of Public Safety, Defendant and Respondent.

No. 15579.

Supreme Court of Utah.

Jan. 15, 1979.

Lucy Billings, Salt Lake City, for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., Bruce M. Hale, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

HALL, Justice:

Plaintiff seeks reversal of an order of the Department of Public Safety (hereinafter "Department") suspending his driver's license, until he has had a hearing as to the probability of his liability for damages. Plaintiff also seeks declaratory judgment that the notice given him of his right to such a hearing violates the due process clauses of the United States and Utah Constitutions.

On May 22, 1977, plaintiff was involved in a motor vehicle accident near Memory Grove in Salt Lake City, Utah. At the time of the accident he was not covered by automobile liability insurance, thereby bringing into effect the provision of the Utah Motor Vehicle Safety Responsibility Act[1] which requires an uninsured motorist to deposit security in an amount determined by the Department or face suspension of his license. This "security-or-suspension" requirement is not applicable, however, if a driver can either (1) establish an "exemption" under U.C.A., 1953, 41–12–5 or 6 or (2) obtain a determination from the department of public safety there is no "probability of liability" on his part for damages sustained in the accident.

The procedure to avoid suspension under this second option is set out in U.C.A., 1953, 41–12–2(c):

At any time within twenty days after providing notice that the [Department] is suspending an operator's license because of probability of liability on the part of an uninsured operator, the operator whose license is to be suspended may apply to the [Department] for a hearing on the propriety of the license suspension. In the event an application for a hearing as provided by this section is timely filed by the operator, the suspension of the license of said operator shall not take effect until the [Department] determines from the results of the hearing that there is probability of liability on the part of the uninsured operator.

The Department sent plaintiff an "Order of Suspension" which was to become effective as of August 8, 1977 (twenty days after the order was signed), unless he deposited the required security or established an exemption as set out on the reverse side of the form. In large capital letters at the bottom of the front side of the form it reads "IMPORTANT—SEE REVERSE SIDE." The reverse side first lists the five categories of evidence[2] by which an exemption may be established, then, again in capital letters it says "ANYTIME PRIOR TO THE EFFECTIVE DATE OF YOUR SUSPENSION A HEARING AS TO LIABILITY, WILL BE GRANTED UPON YOUR REQUEST."

Plaintiff did not request a hearing and the order of suspension became effective. Three days later, on August 11, 1977, plaintiff's counsel asked the Department for a hearing as to the probability of liability, claiming that plaintiff had not had actual notice of his right to a hearing. This request was denied, and the next day plaintiff filed a petition for review of the denial in district court. After hearing oral arguments and examining the written form, the district court dismissed the petition on the ground the form adequately gave plaintiff notice of his rights.

It should first be noted that having a license is a privilege, not a right, and holders of a license are presumed to know the law upon which the privilege is conditioned. However, due process requires notice of intention to terminate the license and an opportunity for hearing prior there-

1. U.C.A., 1953, 41–12–1 et seq.

2. The categories are listed in capital letters and the explanation thereof is in lower case letters.

to.[3] Therefore the only question we are called upon to answer in this case is whether prior to license suspension this plaintiff had notice of his right to a hearing before the Department to determine the probability of his liability. We believe that the form used by the Department is adequately clear to impart notice of the right to hearing and meets due process requirements. The notice received by plaintiff adequately informed him that he was entitled to a pre-suspension hearing to determine whether there was a reasonable probability that he was at fault. This is manifest in the following interchange between defense counsel and the court at trial:

MR. WASSERMAN: —in this case the fact that our client did not have actual notice has been agreed to, there is—

THE COURT: Say that again. He had this notice. (Indicating.)

MR. WASSERMAN: He had the notice. He was not actually aware of his right.

THE COURT: Oh. All right. Notice, he got. Awareness, he may not have had.

MR. WASSERMAN: Well, if I use—

THE COURT: I don't even know what the difference is.

MR. WASSERMAN: If I say awareness as being similar, then he didn't have actual notice.

THE COURT: I don't think it's similar. I think he got this document mailed to him, and the question is whether he read it or not. (Indicating.)

MR. WASSERMAN: Constructive notice is not the case in due process cases, however.

THE COURT: You are talking about notice, and he actually received it at his address.

MR. WASSERMAN: Yes, but these cases—

THE COURT: That's why I asked you what do you have to do to give him notice. Do you have to actually have the Department of Motor Vehicles hand deliver and explain—

MR. WASSERMAN: No.

\* \* \* \* \* \*

THE COURT: The thing I'm trying to determine, the crux of this matter in my judgment is simply the question of whether the effect of actual notice of the rights which are involved was forcibly brought to Mr. Smith's attention by your document so that he knew that he had to come within ten days of this period of time. That's the crux of this case in my judgment.

The trial court specifically found that the form sent to the plaintiff and received by him provided adequate notice of his rights and how to exercise them, which conclusion we hereby affirm.

No costs awarded.

ELLETT, C. J., and CROCKETT, J., concur.

MAUGHAN, Justice, dissenting:

For the following reasons, I dissent. Before us is an appeal from an order of the district court dismissing Smith's petition for (1) reversal of respondent's order suspending his operator's license, until his probable liability could be established through an administrative hearing and (2) a declaratory judgment that the notice given him of a right to such a hearing did not afford him the due process required by the United States and Utah Constitutions. We should reverse and remand. Unless otherwise indicated, all statutory references are to the Utah Motor Vehicle Safety Responsibility Act, Title 41, Chapter 12, Utah Code Annotated (1970 & Supp.1977).

On May 22, 1977, Smith was involved in a motor vehicle accident near Memory Grove in Salt Lake City, Utah. At the time of the accident he was not covered by automobile liability insurance, thereby bringing into effect the provision of the Responsibility Act which requires an uninsured motorist to deposit security in an amount determined by the department of public safety or face suspension of his license. This "security-or-suspension" requirement is not applicable,

---

3. *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

however, if a driver can either (1) establish an "exemption" under sections 41–12–5 or 6 or (2) obtain a determination from the department of public safety there is no "probability of liability" on his part for damages sustained in the accident, section 41–12–2(c).

Respondent sent Smith an "Order of Suspension" which was to become effective as of August 8, 1977 (twenty days after the order was signed), unless appellant deposited the required security or established an exemption as set out on the reverse side of the form.[1] Since Smith could not make the deposit or qualify for an exemption, the only way he could avoid suspension of his license was by showing he was not "probably liable" for the accident through a hearing before respondent. Reference to this option was found on respondent's form at paragraph six on the reverse side and read, "ANYTIME PRIOR TO THE EFFECTIVE DATE OF YOUR SUSPENSION A HEARING AS TO LIABILITY, WILL BE GRANTED UPON YOUR REQUEST."

Smith did not request a hearing and the order of suspension became effective. Three days later, on August 11, 1977, appellant's counsel asked respondent for a hearing as to probable liability, claiming that appellant had not had actual notice of his right to a hearing. This request was denied by respondent, and the next day appellant filed a petition for review of the denial in district court. After hearing oral arguments and examining the written form, the district court dismissed the petition on the ground the form adequately gave appellant notice of his rights.

As a predicate to plaintiff's allegations of the inaccuracy or incompleteness of the notice, which he contends constituted a denial of due process, it is appropriate to review *Bell v. Burson.*[2] This case dealt with the motor vehicle safety responsibility statute of Georgia. The statute was similar to the Utah provisions insofar that only motorists involved in accidents were required to post security under penalty of loss of license.

The court recognized that suspension of a driver's license involved state action, and an

---

1. The relevant part of the order reads as follows:

ORDER OF SUSPENSION
To Become Effective Unless
Security is Deposited or
An Exemption is Established
READ CAREFULLY
Dear Sir or Madam:

As a result of a motor vehicle accident which occurred on <u>May 22, 1977</u>, in or near <u>Salt Lake City</u>, Utah you have become subject to the security requirement provisions of the Financial Responsibility Act, Chapter 12, Title 41, Utah Code Annotated 1953.

Since you have not shown that you had automobile liability insurance in effect at the time of the accident, and since you have not exempted yourself from the security requirement provisions of the Act in any of the other ways permitted, the Department must now make the following Order:

Your privilege of operating a motor vehicle upon the highways of the State of Utah is suspended as of <u>August 8, 1977</u>, UNLESS prior to that date you have done either of the following:

(1) Deposited security with the Department in the amount of <u>$6,637.00</u>, or

(2) Established an exemption from the requirement of depositing such security, or in any of the ways listed on the reverse side of this Order.

IMPORTANT—SEE REVERSE SIDE
The reverse side proceeds:

IMPORTANT
WAYS IN WHICH YOU MAY ESTABLISH AN EXEMPTION

You may establish an exemption from the requirement of depositing security in connection with this accident, and thus avoid the suspension of your driving privilege, by mailing or delivering to the Financial Responsibility Division, Department of Public Safety, 305 State Office Building, Salt Lake City, Utah 84114, any ONE of the following:

6. ANYTIME PRIOR TO THE EFFECTIVE DATE OF YOUR SUSPENSION A HEARING AS TO LIABILITY, WILL BE GRANTED UPON YOUR REQUEST.

As stated on the reverse side, if you establish any of the above exemptions, or deposit the amount of security required, prior to the effective date of this Order, this Order will not become effective. [NOTE: The reference in the sentence above, to "the reverse side," should be corrected to read, "the obverse side."]

2. 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

important interest of the licensee was adjudicated; under such circumstances a license cannot be taken without complying with the procedural due process requirements of the Fourteenth Amendment. The court said:

> . . . Since the only purpose of the provisions before us is to obtain security from which to pay any judgments against the licensee resulting from the accident, we hold that procedural due process will be satisfied by an inquiry limited to the determination whether there is a reasonable possibility of judgments in the amounts claimed being rendered against the licensee.[3]

The court further observed that under the statutory scheme liability was an important factor in the State's determination to deprive an individual of his license, thus the State could not, consistently with due process, eliminate consideration of that factor in its prior hearing. The court stated that except in emergency situations, due process requires that when a State seeks to terminate an interest such as that here involved, it must afford notice and an opportunity for hearing appropriate to the nature of the case *before* the termination becomes effective. The court concluded:

> We hold, then, that under Georgia's present statutory scheme, before the State may deprive petitioner of his driver's license and vehicle registration it must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident . . .[4]

In response to the ruling in *Bell v. Burson,* the legislature in 1973, enacted subdivision (c) to Sec. 41–12–2, it provides:

> At any time within twenty days after providing *notice* that the commission is *suspending* an operator's *license because of probability of liability on the part of an uninsured operator,* the operator whose license is to be suspended may apply to the commission for a hearing on the propriety of the license suspension. In the event an application for a hearing as provided by this section is timely filed by the operator, the suspension of the license of said operator shall not take effect until the commission determines from the results of the hearing that there is *probability of liability on the part of the uninsured operator* . . . [Emphasis added.]

The notice sent to plaintiff imparted the information that he would have his license suspended because he was in an accident, had no insurance, and had not established he was exempt from the security requirement. There was no language to indicate the statutory terms of 41–12–2(c) that his license was being suspended *because* he was probably at fault and therefore liable to respond in damages to the injured party. He was not informed of his constitutional right to a pre-suspension hearing for a probable-cause determination as to his fault.[5]

There was a reference to the reverse side of the notice wherein the ways to establish an exemption were set forth. The first four described what were tantamount to a final determination of fault, viz., evidence of release from liability, evidence of an agreement to pay in installments, evidence of final adjudication of nonliability, and evidence of having been paid by the insurance carrier of the other driver. The fifth exemption involved evidence that an automobile liability policy was in effect at the time of the accident. The sixth provided:

> Anytime Prior to the Effective Date of Your Suspension A Hearing as to Liability, Will Be Granted Upon Your Request.

Particularly when this provision is read in context with the others, it appears to involve a final determination of the licensee's fault; and thus creates an erroneous impression as to the type and nature of the hearing accorded, viz., that a final judg-

---

**3.** At 540 of 402 U.S. at 1590 of 91 S.Ct.

**4.** At p. 542 of 402 U.S., at p. 1591 of 91 S.Ct.

**5.** See *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1970).

ment of the amounted specified may be granted.

For example, the third exemption stated:

3. Evidence Of Final Adjudication of Nonliability—that is, evidence that you have been found not liable in a civil action at law arising out of the accident. (Accordingly, evidence of a police court's having found you not guilty of a traffic violation is not evidence); . . .

A review of the entire notice reveals a serious deficiency or incompleteness in imparting essential knowledge to the licensee; so that he might make an intelligent and informed decision as to whether to waive his constitutional right to a pre-suspension hearing. Specifically, the notice is not designed to inform the licensee that he is entitled to a pre-suspension hearing to determine whether there was a reasonable probability that he was at fault, and a judgment might be rendered against him as a result of the accident.

Due process is not a technical conception with a fixed content unrelated to time, place, and circumstances; it is flexible and requires such procedural protections as the particular situation demands. In an analysis of a procedure an important factor is the risk of an erroneous deprivation of a private interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.[6]

The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it'. [Citation] All that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard' [Citation] to insure that they are given a meaningful opportunity to present their case . . .[7]

To comport with the requirements of due process, the notice must be of such nature as reasonably to convey the required information.[8] In assessing the adequacy of a notice the central issue is whether the communication contains the type of information which is reasonably calculated to afford the informant an opportunity to be heard at a meaningful time and in a meaningful manner.[9]

In *Bell v. Burson*, a constitutional standard was established; the legislature implemented this standard in Sec. 41–12–2(c). The notice sent to plaintiff cannot be deemed to contain the type of information reasonably calculated to inform him of the type and nature of pre-suspension hearing to which he was entitled under the due process clause.

WILKINS, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.

6. Id. at pp. 334–335 of 424 U.S., 96 S.Ct. 893.

7. Id. at pp. 348–349 of 424 U.S., at p. 909 of 96 S.Ct.

8. *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314–315, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

9. *Aguchak v. Montgomery Ward Co., Inc.,* Alaska, 520 P.2d 1352, 1356–1357 (1974).