930 F.2d 922
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Wendy Jean JORGENSEN, Plaintiff-Appellant,
v.
Judy LARSEN, an employee of the Department of Public Safety
of the State of Utah, Defendant-Appellee.
 No. 90-4048.
 United States Court of Appeals, Tenth Circuit.
 April 12, 1991.
 
 Before McKAY, JOHN P. MOORE and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Appellant Jorgensen (Plaintiff) appeals the order of the district court granting Defendant judgment on the pleadings.
 
 
 3
 The facts are undisputed and all stem from Plaintiff's complaint and supplemental affidavit filed when she unsuccessfully sought summary judgment. Plaintiff was married and then applied for and received a Utah driver's license in her married name. Presumably she verified this name change by submitting her marriage documents. Plaintiff was then divorced. The decree of divorce was silent concerning the restoration of her maiden name, even though it is undisputed that the divorce court had the power to restore her maiden name. This decree referred to and identified Plaintiff only by her married name. Plaintiff then went to the Utah Driver's License Division and requested the name on her driver's license be changed to that of Plaintiff's maiden name. At this time, Plaintiff submitted her current Utah's driver's license, which showed her name to be her married name; a copy of the divorce decree, which likewise showed her name to be her married name; and a copy of her birth certificate, as verification of her name change. Defendant, a driver's license examiner, refused to change Plaintiff's name on the driver's license, citing as a reason that Utah law required a verification of the name change in the divorce decree. Plaintiff then filed suit based upon 42 U.S.C. Sec. 1983, alleging the use of her birth name was a property and liberty interest "established by the common law" protected by the United States Constitution and that the conduct of the Defendant constituted a deprivation of property and liberty interests without due process of law. Plaintiff requested damages, injunctive relief, attorney fees, and costs. Plaintiff thereupon filed an affidavit and moved for summary judgment, and Defendant moved for a judgment upon the pleadings.
 
 
 4
 The district court, in a written Memorandum Decision and Order, which is the order appealed, decided the case in favor of Defendant. The district court held that under Utah Driver's License Division policies, "other evidence considered acceptable" to change a name upon the driver's license included a marriage license and/or certificate and a divorce decree with a specific name-changing provision, and that a divorce decree without a specific name-changing provision is not an acceptable name change verification under the policies. The district court then analyzed Utah law and concluded there is no unlimited common law right in Utah to use any name at any time, and held that Utah statutory law replaces the applicable common law rules. Finally, the district court held that the policies and rules of the Driver's License Division do not violate any common law right to the use of a name because those "policies and rules only establish the use of names which appear on driver's licenses."
 
 
 5
 The district court rejected Plaintiff's claim that the applicable rules deprive Plaintiff of a property interest in the use of her birth name without due process of law. The court so held for two reasons: (1) the refusal of the Driver's License Division to change Plaintiff's driver's license does not deny her the use of any name, it merely controls what name she is referred to by the Driver's License Division; and (2) adequate state procedures are available to Plaintiff, including returning to the divorce court to obtain an amendment to the divorce decree to reflect resumption of use of her maiden name and an action to change her name.
 
 
 6
 The district court rejected Plaintiff's final claim that by treating "formerly married women" differently from both men and "recently married women," the Driver's License Division rules deny her equal protection of law. The court concluded that the Utah regulation requiring each driver to secure a license only in his or her "legal name" was reasonable and had a rational basis related to a legitimate state interest of maintaining a close watch over its licensees, pointing out the confusion that would result if a driver were allowed to obtain licenses in any number of names he or she desires, noting that Utah has afforded a simple, inexpensive means by which any person can change his name.
 
 
 7
 Plaintiff now asserts: (1) the State of Utah denied her of property rights and liberty interests in the use of her birth name without procedural due process, these property and liberty interests being created by Utah law, which adopts the common law and which in turn permits a person to change his or her name at will; (2) her equal protection rights were violated when Defendant refused to acknowledge Plaintiff's name change; (3) her substantive due process rights were violated; (4) Plaintiff's freedom of expression was violated; and (5) her privacy interest in her birth name was violated. Plaintiff has also requested that we stay this proceeding and certify the question of whether or not Utah recognizes the common law right to change one's name at will.
 
 
 8
 Granting a motion for judgment on the pleadings is a final judgment on the merits. 51 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1372 (1990). Review of questions of law decided by the district court by granting such a motion is de novo. Bill's Coal Co. v. Board of Pub. Utils., 887 F.2d 242, 244 (10th Cir.1989).
 
 
 9
 We must first decide if the district court was correct when it decided there is no right to use any name in Utah at any time. The district court reached this conclusion by setting forth various Utah statutes dealing with names, including the procedure providing for a formal name change by action of court after notice. The district court concluded the statutory law of Utah concerning names replaced the common law and held there exists no right to use any name a person desires on a Utah driver's license. We concur with the district court for substantially the same reasons set forth by the district judge in his Memorandum Decision and Order entered October 18, 1989.
 
 
 10
 We decline to certify this question to the Utah Supreme Court. Plaintiff chose this forum to litigate and could have achieved her desire for a state court ruling had she filed this action in the appropriate state court. Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir.1988) ("Whether to certify a question of state law to the state supreme court is within the discretion of the federal court."); Ormsbee Dev. Co. v. Grace, 668 F.2d 1140, 1149 (10th Cir.) (certification is discretionary and must be used with restraint and distinction), cert. denied, 459 U.S. 838 (1982).
 
 
 11
 Section 1983 covers the violation, under color of state law, of all rights, privileges or immunities secured by the federal constitution and laws. The crucial rights covered include the right not to be deprived of life, liberty, or property without due process of law. "Property" under the Fourteenth Amendment is broader than technical rules under state law. Property interests are not created by the Constitution; rather, they are created and defined by existing rules or understandings that stem from an independent source, such as state law. Generally speaking, "property" is an interest to which a law has given someone an entitlement. As already discussed, Utah common law concerning names was displaced by statutory law, and the Plaintiff can cite no Utah statute creating the right to use any name on a Utah driver's license. Thus, Plaintiff fails in her claim that she has a property entitlement in Utah to use her maiden name on her driver's license.[1]
 
 
 12
 Plaintiff next contends that she has a protected liberty interest in the use of her birth name on her Utah driver's license. A protected liberty interest may arise from two sources, either the due process clause itself, or the laws of the states. Plaintiff has failed to cite to us any applicable cases or otherwise persuade us that the use of her birth name on her driver's license, under the facts of this case, is a protected liberty interest.
 
 
 13
 The final argument raised by the Plaintiff in the district court was that by treating "formerly married women" differently from both men and "recently married women," the Driver's License Division rules deny her equal protection of law. The district court held that Utah law requiring each driver to obtain his license in his or her "legal name" was reasonable and had a rational basis related to a legitimate state interest of maintaining a close watch over its licensees. The court noted the confusion that would result if a driver were allowed to obtain licenses in any number of names he or she desired concerning the maintenance of driving records and the identification purposes to which a license is put.
 
 
 14
 This case presents no claim that the treatment Plaintiff received is based on sexual or gender stereotypes. The rules at issue set forth two classifications, one for "married women" and one for "divorced women," and then treats each class differently. Assuming there is a sexual or gender classification, then the test would be whether the classification bears a fair and substantial relation to an important governmental interest. Craig v. Boren, 429 U.S. 190 (1976).
 
 
 15
 With this assumption and test in mind we have reviewed Utah law concerning driver's licenses. In so doing, we find that in Utah "having a [driver's] license is a privilege, not a right, and holders of a license are presumed to know the law upon which the privilege is conditioned." Smith v. Mahoney, 590 P.2d 323, 324 (Utah 1979). Moreover, we find Utah obviously believes its laws concerning regulation of driver's licenses are an important governmental interest implicating Utah's inherent police power. In State v. Stevens, 718 P.2d 398 (Utah 1986), the Utah Supreme Court declared:
 
 
 16
 We have often stated, and reaffirm here, that our legislature has the power and duty to promote the public health, safety, and general welfare of all citizens. In furtherance of that power and duty, conditions and regulations for the operation of motor vehicles on our public roads and highways are a proper subject for legislative action.
 
 
 17
 718 P.2d at 399 (footnote omitted).
 
 
 18
 As the district court recognized, Plaintiff has several readily available means by which to change her name. In a quick and inexpensive procedure Plaintiff may return to divorce court and request an equitable order amending her divorce decree to show her maiden name. Utah Code Ann. Sec. 30-3-5(1) (Repl.Vol.1989). In the unlikely event the state court refuses to amend Plaintiff's divorce decree on equitable grounds, Plaintiff may proceed to have her name changed by following the general Utah statute governing name changes. Utah Code Ann. Sec. 42-1-1 (Repl.Vol.1988). When considering these simple ways by which Plaintiff may change her name against Utah's asserted important health, safety and public welfare interest in regulating and maintaining an orderly transportation system, we cannot say the district reached the wrong result in rejecting Plaintiff's equal protection claim. See, e.g., Wells v. Malloy, 402 F.Supp. 856, 858 (D.Vt.1975) (driver's license is not a fundamental property right in the constitutional sense), aff'd 538 F.2d 317 (2d Cir.1976); Snelgrove v. Department of Motor Vehicles, 194 Cal.App.3d 1364, 240 Cal.Rptr. 281, 289 (1987) (driving is not a fundamental right for equal protection or due process purposes and is subject to police power regulation).
 
 
 19
 Plaintiff's remaining assertions of error were not addressed by the district court. Plaintiff asserts they were raised but fails to cite to us where in the record said issues were raised. Notwithstanding this noncompliance with our rules, we have searched the record on appeal and can find no evidence these issues were presented to the district court. We will not search the district court's records to determine this issue. Our 10th Cir.R. 28.2(d) requires a party to state where in the record the issue was raised. A failure to adhere to this rule results in this court treating such issues as if they were not raised in the trial court.
 
 
 20
 The motion to certify a question of state law is denied. The judgment of the district court is AFFIRMED.
 
 McKAY, Circuit Judge, dissenting:
 
 21
 I cannot agree with the majority. I believe that the challenged regulation places an extra procedural burden on divorced women without any legal or rational basis. Because neither the government nor the majority can point to any legal basis for requiring a divorced woman to obtain legal process before reassuming her maiden name, and because of the disparate way in which the Utah Driver License Division handles other name changes, the challenged regulation cannot withstand even the most deferential review. Therefore, in my view, the regulation violates Ms. Jorgensen's right to equal protection.
 
 
 22
 The Utah statute governing application for a driver's license requires only that the applicant state her "full legal name." Utah Code Ann. Sec. 41-2-112 (1953, as amended). Utah law does not define "legal name." Nothing in the Utah statutes or common law requires a married woman to assume her husband's name. Nor does the law specify anything regarding the restoration of a maiden name following a divorce.
 
 
 23
 One Utah Supreme Court justice has stated, however, that "[a] girl's maiden name is her legal name and she is entitled to use it whether or not she is married." State v. Housekeeper, 588 P.2d 139, 141 (Utah 1978) (Wilkins, J., dissenting). The general rule among the states is that "[t]he right of a woman to her birth-given name, notwithstanding marriage, is established in law. It is now generally recognized that a married woman acquires her husband's surname by repute only, as a matter of custom rather than as a matter of law." 57 Am.Jur.2d, Name Sec. 10 (1988). Furthermore, "[a] woman whose marriage has been dissolved, by divorce or annulment, should have an absolute right, absent fraudulent intent, to resume her former name or adopt a new name, regardless of whether there are living issue from the marriage, with or without a court order." Id. at Sec. 39 (emphasis added). Neither the district court nor the majority cites any authority for the proposition that, absent a court decree, a divorced woman's legal name is her married name.
 
 
 24
 The district court relied on Forbush v. Wallace, 341 F.Supp. 217 (M.D.Ala.1971), aff'd without opinion, 405 U.S. 970 (1971), for its holding that the challenged regulation "was reasonable and had a rationale [sic] basis related to a legitimate state interest of maintaining a close watch over its licensees." Jorgensen v. Larsen, No. C-88-761G, slip op. at 9 (D.Utah Oct. 18, 1989). Forbush upheld an Alabama requirement that all married women, even those who continue to use their maiden names, apply for drivers' licenses in their husbands' names. However, Forbush is inapposite in this case for two reasons.
 
 
 25
 First, the Forbush court based its decision upon the fact that "Alabama has adopted the common law rule that upon marriage the wife by operation of law takes the husband's surname."[1] Id. at 221. The court explained,
 
 
 26
 Apparently, in an effort to police its administration of the issuance of licenses and to preserve the integrity of the license as a means of identification, the Department of Public Safety has required that each driver obtain his license in his "legal name." Thus, in conformity with the common law rule, the regulation under attack requires that a married woman obtain her license in her husband's surname.
 
 
 27
 Id. No one in this case contends that such a common law rule exists in Utah.[2]
 
 
 28
 Second, while Forbush deals with the legal name of married women, it makes no mention of the legal name of divorced women. As I stated above, nothing under the common law indicates that, with or without a court decree, a divorced woman's legal name is anything other than her maiden name. See 57 Am.Jur.2d, Name Sec. 39. The only federal case I located which deals with the rights of divorced women to use their maiden names is Walker v. Jackson, 391 F.Supp. 1395 (E.D.Ark.1975). Walker challenged an Alabama regulation which required women to use their married names when they registered to vote. The Walker court held that the challenged regulation unconstitutionally discriminated against women. Among the plaintiffs in Walker was a divorced woman who attempted to register in her maiden name. The court held that Arkansas law would not support a requirement that a divorced woman continue to register in her husband's name. The court stated:
 
 
 29
 With respect to divorced women, the decrees of divorce frequently provide that they may resume their maiden name; such provisions, however, would seem to be nothing more than a recognition of a right that would exist in any event. In that connection, in 24 Am.Jur.2d, Divorce and Separation, Sec. 882, p. 1002, it is said that since ordinarily there is no property in a name and a person may assume any name he or she desires, "the name which a divorced woman shall bear would seem to be a matter of choice with her."
 
 
 30
 The common law rule that a married woman takes her husband's surname was based on immemorial custom and usage in England and in this country. As far as we know there has never been any such uniform custom and usage as would dictate a common law rule that a divorced woman is required to retain the name of her former husband against her wishes.
 
 
 31
 Id. at 1402 (emphasis added).
 
 
 32
 Thus, it appears that, without any legal justification, Utah is imposing an unnecessary burden on women who wish to resume using their maiden names after divorce. Moreover, Utah law requires applicants to use their "legal name." The appellant's "legal name" may very well be her maiden name. (No one has proved the contrary.) But the Driver License Division will not allow her to use it. I believe this is irrational.
 
 
 33
 Of course, the state does not have to show that the law requires a divorced woman to have a court decree to resume using her maiden name; it merely has to show that the Driver License Division regulation is rationally related to its interest in "maintaining a close watch over its licensees." However, when the challenged regulation is compared with the state's handling of other licensee name changes, the irrationality of the regulation becomes apparent.
 
 
 34
 When a newly married woman wishes to have a new license issued in her married name, she need only present her marriage certificate at the Driver License Division. One can no longer assume that a married woman will adopt her husband's name. She may continue to use her maiden name, or may adopt a hyphenate. Nor does the marriage certificate contain any order verifying that the married woman is, indeed, adopting her husband's name. Yet the Driver License Division accepts the marriage certificate, plus the word of the applicant, as proof of a name change. There seems to be no greater risk in the divorce context than in the marriage context that a woman will request a name change on her driver's license when she does not, in fact, intend to adopt a different name. I can conceive of no legitimate interest which the state of Utah might have in making it simple for a woman to adopt a husband's name, but difficult for her to shed it.
 
 
 35
 I must also take issue with the majority's apparent reliance on the fact that the Utah courts offer "simple, inexpensive means by which a person can change his or her name on the driving license." Maj. op. at ----. In other words, the appellant cannot challenge the regulation requiring her to get a court decree, because she can just go get the court decree. Under that rationale, no law or regulation would ever be struck down, because any litigant can be said to have the alternative of complying with a challenged law.
 
 
 36
 Likewise, I take issue with the majority's aside regarding the fact that the appellant is still using her married name, and, in fact, brought this action in her married name. The majority must recognize how difficult it is to do something as simple as cashing a check without a driver's license as identification. By refusing to issue a driver's license in the appellant's maiden name, the state has, in all likelihood, forced the appellant to use her married name in many contexts. Furthermore, by its actions, the state has, in effect, told the appellant that her "legal name" is her married name. How can the majority then seize on the fact that she brought suit in that name as evidence that she has no right to relief?
 
 
 37
 In sum, I would require the Utah Driver License Division to accept a divorce decree as evidence that a woman is reassuming her maiden name. Any further requirement seems extraneous, and can be justified on no grounds other than irrational custom. I agree with the rationale used by the Walker court in striking down a voter registration regulation:
 
 
 38
 Conceding that the burden that the ... requirement places upon female applicants ... is slight, although obviously offensive to some and perhaps many of such applicants, the trouble that we have with the requirement is that the State has no conceivable interest in imposing it. It has no reasonable or rational basis.
 
 
 39
 391 F.Supp. at 1403.
 
 
 40
 I therefore respectfully dissent.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Plaintiff voluntarily assumed to use her married name on her driver's license following her marriage. Plaintiff filed for and received the divorce. For reasons known only to Plaintiff, she accepted the decree and made no effort to amend the decree. Plaintiff was referred to only by her married name in the decree. We also note that Plaintiff is apparently still using her married name. For instance, this suit was brought in her married name
 
 
 [1]
 Interestingly, the Alabama Supreme Court later rejected the reasoning of Forbush and held that in Alabama, a woman may take her husband's surname as a matter of custom, but it is not required by law. State v. Taylor, 415 So.2d 1043, 1047-48 (Ala.1982) (holding that married women may register to vote in their maiden names)
 
 
 [2]
 A panel of the Sixth Circuit followed Forbush in Whitlow v. Hodges, 539 F.2d 582 (6th Cir.1976). The Whitlow court upheld a Kentucky regulation requiring a woman to apply for a driver's license in her husband's name. The district court in Whitlow had determined that Kentucky, like Alabama, required married women to adopt their husbands' surnames. The appellate court, however, left the question open and stated that its decision need not rest on an interpretation of Kentucky law, because Kentucky provided an inexpensive method for changing names, and because the challenged regulation was rationally related to a legitimate state interest. Id. at 583
 A strong dissent in Whitlow argued that the majority's reliance on Forbush was improper, because Forbush was based on the finding that Alabama law required a married woman to adopt her husband's name, while the Whitlow majority had failed to determine whether Kentucky law contained a similar requirement:
 The cases are alike in respect that Kentucky, like Alabama, requires a driver to obtain a license in his legal name. However, the majority opinion does not determine whether the district court was correct in holding that Kentucky, like Alabama, also had a common law rule requiring a married woman to adopt her husband's surname.... Mistakenly following Forbush, the majority opinion would hold that Kentucky, which requires a driver to be licensed in his legal name, can rationally require persons in plaintiff's class [women who continue to use their maiden names after marriage] to be issued licenses in names which under state law are not their legal names and by which they have never been known. Accordingly, the state interests found to be determinative in Forbush, the effective administration of the issuance of licenses and the preservation of the integrity of licenses as a means of identification, cannot possibly be served by requiring a class of drivers to be issued licenses in names which are not their legal names, and by which they are not and have never been known. It seems equally clear that Forbush, which depends upon a rational justification, does not compel such a result.
 Id. at 585 (McCree, J., dissenting).
 I would decline to follow Whitlow. I agree with the reasoning of the Whitlow dissent. Furthermore, as I discuss in the text, this case deals with the legal name of a divorced woman, not a married woman.